Richard W. BROWN, et al.,
Plaintiffs–Appellees,

v.

LOCAL 58, INTERNATIONAL BROTH-
ERHOOD OF ELECTRICAL WORK-
ERS, AFL–CIO, Defendant–Appellant.

No. 94–1558.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 8, 1995.

Decided Feb. 26, 1996.

Barbara M. Harvey (argued and briefed), Detroit, MI, for plaintiffs-appellees.

Christopher P. Legghio (argued and briefed), Ronald C. Engler, Miller, Cohen, Martens, Ice & Geary, Southfield, MI, for defendant-appellant.

Before KENNEDY, WELLFORD, and SILER, Circuit Judges.

WELLFORD, Circuit Judge.

This appeal involves a request for attorneys' fees and costs incurred by members of an electrical union during litigation against their local. Though the union members voluntarily dismissed their action without prejudice, they sought an award of attorneys' fees and costs from the local on the grounds that they were prevailing parties. They contend that their lawsuit was a catalyst that caused the local to reform the procedures by which collective bargaining agreements are ratified. The union members also maintain that their lawsuit caused the local to reinsert a disputed contractual provision into the union's new contract. The district court granted the union members' original and supplemental requests for attorneys' fees and costs. For the reasons stated below, we **REVERSE**.

## I. STATEMENT OF FACTS

Local 58 of the International Brotherhood of Electrical Workers (Local 58), is the exclusive bargaining agent for more than 2,500 electrical workers employed by the Detroit, Michigan Chapter of the National Electrical Contractors Association (NECA). Historically, the local unions affiliated with the International (IBEW) exercised total autonomy in the negotiation of collective bargaining agreements (CBA). In May of 1989, Local 58's bargaining committee reached tentative agreement with NECA on a three year contract. In the proposed CBA, the parties agreed to substitute a standard CIR[1] clause for the modified CIR provision in the existing contract. A "standard" CIR clause allows either the union or management to unilaterally submit a labor dispute to binding arbitration, while a "modified" CIR provides for binding arbitration only when both parties jointly agree.

Several days before a scheduled vote on ratification of the new CBA, plaintiffs learned of the standard CIR clause in the proposed contract. They feared that, if NECA could unilaterally submit labor disputes to binding arbitration, a standard CIR clause would effectively deprive the union of the ability to strike and thereby diminish its leverage in the bargaining process. Plaintiffs sought to postpone the mailing of ballots until a special meeting of the membership

---

1. The Council on Industrial Relations is a joint union-management committee.

could be called to debate the merits of the proposed CBA. The leadership of Local 58 resisted these efforts, however, and mailed out the ballots on schedule.

On June 13, 1989, plaintiffs filed suit in federal district court, seeking a temporary restraining order (TRO) to prevent Local 58 from tallying the ballots. Plaintiffs further claimed that Local 58 did not provide the membership a sufficient explanation of the new contract, specifically the proposed CIR clause, and that Local 58 failed to hold a "special call" meeting to discuss the new CBA. They based their claim for injunctive relief on the Labor–Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 411(a)(1),(2).[2] The district court refused to enjoin the counting of the ballots but agreed to enjoin enforcement of the new contract, pending a hearing on plaintiffs' claim for preliminary injunctive relief.

On June 28, 1989, the district court dissolved the TRO, denied preliminary injunctive relief, and allowed the 1989–1992 CBA to take effect. Plaintiffs moved for entry of final judgment under Federal Rule of Civil Procedure 58, arguing that the district court's order denied them the principal relief sought. The district court denied this motion. On July 18, 1989, at Local 58's first meeting following the lawsuit, the membership proposed an amendment to the union's by-laws, requiring a "special order of business meeting" to provide notice of changes in future contracts. One month later, the membership formally approved the amendment.[3]

On May 10, 1990, the district court heard argument on the parties' cross-motions for summary judgment. The court then granted Local 58's motion, finding that the union adequately informed its membership about the contents of the proposed CBA. The court also rejected the claim that the bargaining committee violated its duty of fair representation.[4]

On appeal, we affirmed, in part, and reversed in part. *See* 936 F.2d 251, 255 (6th Cir.1991). Though we agreed with the district court on the duty of fair representation claim, we reversed summary judgment as to plaintiffs' LMRDA claims. We noted that the record revealed disputed issues of material fact about which the district court made no specific findings. *Id.* On August 7, 1991, we remanded the LMRDA claims for trial.

The 1989–1992 CBA was scheduled to expire in June of 1992. Plaintiffs contacted the IBEW and indicated a willingness to dismiss their lawsuit against Local 58 if Local 58 agreed to include a modified CIR clause in the new contract that was then being negotiated with NECA. The IBEW agreed that the NECA would reinstate the modified clause in the new contract if Local 58 "insisted to impasse" during negotiations. The IBEW, however, did not have the authority to bind Local 58. As the parties prepared for trial and entered their respective pretrial orders, the district court postponed the date of trial in the hope of settling the case. Local 58 and NECA eventually agreed to reinsert a modified CIR clause into the new CBA and, on August 31, 1992, plaintiffs moved for voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2). The district court granted this motion that day and the clerk entered the district court's order on September 1, 1992. On September 11, 1992, Local 58 filed a motion for entry of an alternative order, asking that the voluntary dismissal be entered with prejudice. The court denied the motion on October 30, 1992.

Though plaintiffs did not receive a judgment on the merits, they filed an application for attorneys' fees and costs on November 30, 1992, arguing that they were "prevailing parties" because their lawsuit was the cata-

---

**2.** Plaintiffs' amended complaint named Local 58, the IBEW and NECA as defendants. In addition to their LMRDA claims, they alleged that Local 58 breached its duty of fair representation, and also requested costs and reasonable attorneys' fees.

**3.** According to Local 58, amendments to the union's by-laws become effective only after approv-

al by the president of the IBEW. Local 58 contends that the IBEW president never ratified the amendment.

**4.** Because plaintiffs dismissed the IBEW on March 6, 1990, the court's grant of summary judgment applied only to Local 58 and NECA.

lyst that precipitated the union's adoption of the by-law amendment and the reversion to the modified CIR clause. The district court referred the application to a magistrate judge, who recommended that plaintiffs receive an award of attorneys' fees with respect to Local 58's adoption of the by-law amendment. However, because he found no evidence of a causal link between the lawsuit and the CIR clause in the 1992 agreement, the magistrate rejected their request for fees with respect to the modified CIR clause.

Both parties filed timely objections to the magistrate's report. The district court accepted the magistrate judge's recommendation with respect to the award of attorneys' fees for the by-law amendment. The court concluded, however, that there was also a causal link between the lawsuit and Local 58's advocacy of a modified CIR provision. Consequently, the court granted plaintiffs' request for fees and costs on April 6, 1994. On May 5, 1994, plaintiffs filed a supplemental application, seeking recovery of fees and expenses incurred litigating their status as "prevailing parties." The district court granted the supplemental application on June 8, 1994. This appeal followed.

## II. *DISCUSSION*

Local 58 raises numerous objections on appeal. The first four pertain to this court's jurisdiction. The remaining issues relate to the merits of the fee award. We address each *seriatim.*

### *Part A—Jurisdiction*

■ Local 58 contends that upon dismissal of the lawsuit, the district court lost jurisdiction to consider the application for attorneys' fees and costs. Local 58 suggests that a voluntary dismissal under Federal Rule of Civil Procedure 41(a) deprives a district court of jurisdiction over a subsequent request for attorneys' fees unless the court expressly reserves jurisdiction. Plaintiffs respond that a request for attorneys' fees is collateral to the underlying lawsuit and that final disposition on the merits does not affect the district court's authority to award fees and costs.

The Supreme Court has repeatedly held that "a request for attorney's fees . . . raises legal issues collateral to the main cause of action." *White v. New Hampshire Dep't of Employment Sec.,* 455 U.S. 445, 451, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982); *see also Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 200, 108 S.Ct. 1717, 1720–21, 100 L.Ed.2d 178 (1988) ("[W]e think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain."). Local 58 relies upon decisions holding that a voluntary dismissal wrests jurisdiction from the district court and renders a subsequent request for attorneys' fees "a nullity." *Santiago v. Victim Servs. Agency of the Metro. Assistance Corp.,* 753 F.2d 219, 221 (2d Cir.1985); *Williams v. Ezell,* 531 F.2d 1261, 1264 (5th Cir.1976).

The Supreme Court, however, recently made clear that it disapproved of the approach taken in *Santiago.* In *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393–94, 110 S.Ct. 2447, 2454–55, 110 L.Ed.2d 359 (1990), the Court considered whether a plaintiff's voluntary dismissal under Rule 41(a)(1) divested the district court of jurisdiction to assess Rule 11 sanctions. The Court rejected the Second Circuit's reasoning,[5] holding that a district court retains jurisdiction to impose sanctions even after a plaintiff voluntarily dismisses its action under Rule 41(a). *Id.* at 394, 398, 110 S.Ct. at 2455, 2457. The Court reasoned that:

> [l]ike the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: . . . Such a determination may be made after the principal suit has been terminated.

*Id.* at 396, 110 S.Ct. at 2456. Though dicta, this passage implies that a district court retains jurisdiction to consider the question of

---

5. The Supreme Court criticized the Second Circuit's decision in *Johnson Chemical Co. v. Home Care Products, Inc.,* 823 F.2d 28, 31 (2d Cir.1987) (relying on *Santiago's* reasoning to hold that a voluntary dismissal deprives the district court of jurisdiction to impose Rule 11 sanctions).

attorneys' fees after a plaintiff has dismissed its suit under Rule 41(a).

While this court has no decision directly on point, *Othen v. Ann Arbor School Board,* 699 F.2d 309 (6th Cir.1983) reached the same conclusion, albeit implicitly. In that case, plaintiff brought a civil rights action against defendant but subsequently dismissed the suit pursuant to Rule 41(a)(2). *Id.* at 312. Plaintiff then filed an application for attorneys' fees and costs, arguing that his suit served as a catalyst for defendant's compliance with the civil rights laws. *Id.* This court did not address the jurisdictional issue but proceeded directly to consideration of the merits of plaintiff's request for fees and costs. *Id.* at 313. Clearly, the court and the parties assumed that, despite the voluntary dismissal, the district court retained jurisdiction to address the request for attorneys' fees. *See also Taylor v. Great Lakes Seamen's Union, Local 5000,* 657 F.Supp. 550, 563 n. 1, 567 (N.D.Ohio 1984) (following *Othen* where plaintiff voluntarily dismissed LMRDA claims and subsequently sought attorneys' fees on a common benefit theory).

■ Local 58 does not address *Cooter & Gell* but distinguishes *Othen* and *Taylor* on the grounds that the plaintiffs in those cases expressly reserved their right to seek attorneys' fees when they voluntarily dismissed their actions. Local 58 correctly notes that plaintiffs made no reservation of jurisdiction in this case and that the district court's order purports to dismiss the complaint "in its entirety." We do not believe, however, that a plaintiff forfeits its right to seek attorneys' fees simply because it fails to reserve the right in its Rule 41(a) motion. Neither Rule 41(a) nor the rules of equity support such a requirement. First, Rule 41(a) is silent about jurisdiction. Second, since plaintiffs' amended complaint requested attorneys' fees and costs, Local 58 had ample notice that plaintiffs would seek to recover fees. The failure to reserve jurisdiction specifically did not prejudice the union. We believe the district court possessed jurisdiction to resolve plaintiffs' application for attorneys' fees and costs.

■ Local 58 next claims that plaintiffs filed their *original* fee application out of time. Both parties agree that Local Rule 54.2 governs the time period for filing applications for attorneys' fees. That provision provides that "an application for attorney fees by a prevailing party ... shall be filed within [thirty] days after the entry of judgment." E.D. MICH. LOC. R. 54.2. Local 58 contends that the entry of judgment in this case occurred on September 1, 1992, when the clerk of court entered the district court's order granting plaintiffs' motion for voluntary dismissal. Consequently, Local 58 argues that the thirty day time period for filing a fee application expired on October 1, 1992. Since plaintiffs did not submit their fee application until November 30, 1992, Local 58 concludes that the application was untimely.

Both the magistrate and district judge rejected this argument because they found that the September 1, 1992 order—the order granting plaintiffs' voluntary dismissal—was not a final judgment. Federal Rule of Civil Procedure 54(a) states that a "'[j]udgment' as used in these rules includes a decree and any *order from which an appeal lies.*" FED. R. CIV. P. 54(a) (emphasis added). Thus, in determining whether the September 1, 1992 order was a judgment for the purposes of a fee application under Local Rule 54.2, the district court properly focused on whether an appeal could have been taken from that order. The district court concluded that Local 58's motion for entry of an alternative order, filed on September 11, 1992, prevented either party from appealing the September 1, 1992 order. Under Federal Rule of Appellate Procedure 4, if a party files a motion to alter or amend a judgment under Rule 59(e), the time for filing an appeal runs from the date on which the district court resolves that motion, not the date of the judgment that is the subject of the motion. FED. R.APP. P. 4(a)(4)(C). If a party has already filed a notice of appeal at the time a motion to alter or amend the judgment is made, the notice of appeal is rendered ineffective. Consequently, the district court correctly held that the final judgment for the purposes of plaintiffs' fee application was the court's denial of Local 58's motion for entry of an alternative order. Since the clerk of court entered that order on November 4, 1992, the district court conclud-

ed that the November 30, 1992 fee request was timely.

Local 58 argues that the district court was clearly erroneous when it concluded that the motion for entry of an alternative order affected the appealability of the September 1, 1992 order. Local 58's principal contention is that its motion was not a Rule 59(e) motion to alter or amend judgment. Local 58 notes that its motion was not styled as a Rule 59(e) motion and that the motion did not attempt to amend a judgment but rather an order of dismissal. We find neither of these arguments persuasive. That Local 58 did not style its pleading as a Rule 59(e) motion is not dispositive. The substance of the motion, rather than its form, controls our inquiry. *E.g., BBCA, Inc. v. United States,* 954 F.2d 1429, 1431–32 (8th Cir.), *cert. denied,* 506 U.S. 866, 113 S.Ct. 192, 121 L.Ed.2d 136 (1992); *see also United States v. Hess,* 982 F.2d 181, 185 (6th Cir.1992). Rule 54(a) also rejects the union's narrow reading of the term "judgment." The rule specifically includes within the definition of "judgment" all decrees and orders from which an appeal will lie. FED. R. CIV. P. 54(a). Thus, if Local 58's pleading was, in substance, a motion to alter or amend the district court's September 1, 1992 order of dismissal, then the thirty day time limit of Local Rule 54.2 commenced running on November 4, 1992.

Citing *St. Paul Fire & Marine Insurance Co. v. Continental Casualty Co.,* 684 F.2d 691 (10th Cir.1982), Local 58 argues that its motion to enter an alternative order was not a Rule 59(e) motion. *St. Paul Fire* involved the question of whether a pleading that was captioned, "Objections to Proposed Order," constituted a Rule 59(e) motion for the purposes of tolling the time limit for appeal. *Id.* at 692. *St. Paul* noted that the critical inquiry is whether the motion "call[s] into question the correctness of a judgment on some material point of fact or law, and may properly be cast in the form of a motion to reconsider, to vacate, to set aside, for reargument, or for rehearing." *Id.* at 693. The court explained that a motion that merely seeks a technical change in the form of judgment is not a Rule 59(e) motion, but rather akin to a Rule 60(a) motion to correct clerical

errors in the judgment. *Id.* Since the Tenth Circuit found the "Objections to Proposed Order" to be an objection to the form—rather than the substance—of the district court's order, it held that the pleading was not a Rule 59(e) motion. *Id.* at 694.

Local 58 argues that, like the pleading in *St. Paul Fire,* its motion to enter an alternative order did not propose to affect the finality of the order, since the lawsuit would have remained dismissed even if the district court had granted the motion. Local 58's motion, however, sought more than a mere technical change in the district court's order. Absent the motion, plaintiffs were free to refile their LMRDA claims. If the district court had granted Local 58's motion to dismiss with prejudice, plaintiffs could not have pursued that option. *St. Paul Fire* made clear that a pleading that moves the court to reconsider, vacate or set aside a prior order is a motion to amend or alter the judgment. *Id.* at 693. *Compare BBCA, Inc.,* 954 F.2d at 1432 (holding that a pleading is a Rule 59(e) motion when it seeks "a substantive change in the judgment"). Here, Local 58's motion asked the district court to vacate its prior order and to substitute an order with a substantially different impact upon the substantive rights of the parties.

Federal Rule of Appellate Procedure 4(a)(4) seeks to prevent the filing of futile appeals from orders that might be changed because of subsequent motions to amend or alter the judgment. FED. R.APP. P. 4(a)(4) advisory committee's note. Rule 4(a)(4) advances a policy favoring conservation of appellate resources and that policy is reflected in this case. Had the district court granted Local 58's motion for entry of an alternative order, a notice of appeal filed in the interim would have become moot. Clearly, then, Local 58's September 11, 1992 motion affected the appealability of the September 1, 1992 order of dismissal.

Accordingly, we believe Local 58's motion for entry of an alternative order was effectively a Rule 59(e) motion, whether or not it was denominated as such, and that it rendered the September 1, 1992 order of dismissal unappealable under Rule 4(a)(4). Therefore, under Rule 54(a), the November

4, 1992 order was the final judgment in this case. Thus, we believe the district court correctly held that plaintiffs filed their application for attorneys' fees within the thirty day time limit of Local Rule 54.2.

Local 58 also contests the timeliness of plaintiffs' *supplemental* application for fees and costs. Plaintiffs filed their supplemental application on May 5, 1994, twenty-nine days after the district court entered its order declaring them prevailing parties under LMRDA. As noted above, a prevailing party must submit its application for attorneys' fees and costs within thirty days of the entry of judgment. E.D. MICH. LOC. R. 54.2. Local 58 contends that the supplemental application was untimely for two reasons. First, appellant argues that the district court entered judgment, at the latest, on November 4, 1992, when it denied the motion for entry of an alternative order. Consequently, Local 58 calculates that plaintiffs filed the supplemental application 521 days late. Second, Local 58 suggests that the supplemental application was the equivalent of a Rule 59(e) motion to alter or amend the district court's original order granting fees. Since a Rule 59(e) motion must be filed within ten days of the entry of judgment, Local 58 argues that the May 5, 1994 supplemental fee application was nineteen days late.

The district court rejected both of these arguments. The court held that the April 6, 1994 order, declaring plaintiffs to be prevailing parties, was the final judgment for the purposes of the supplemental fee application. As with the dispute over the timeliness of the original application, the district court concluded that the prevailing party determination was a condition precedent to plaintiffs' right to seek supplemental fees. Therefore, the district court concluded that plaintiffs had thirty days from April 6, 1994 to file their supplemental application. Since plaintiffs filed their application on May 5, 1994, the court held that it was timely. The district court also rejected Local 58's contention that the supplemental fee application was a Rule 59(e) motion. Citing the Supreme Court's decision in *White, supra*, the court held that the supplemental application raised issues collateral to the original application.

Consequently, the district court held that the supplemental application was not a Rule 59(e) motion and was not subject to the rule's ten day time limit.

■ We agree with the district court's analysis on both counts. As for Local 58's first argument, the supplemental application was timely if the district court's April 6, 1994 order was a final judgment. The order was a final judgment if either party could have appealed from the order. FED. R. CIV. P. 54(a). Local 58 filed a notice of appeal on May 5, 1994 and neither party filed a timely motion that rendered that notice ineffective under Rule 4(a)(4). Consequently, the thirty day time limit of Local Rule 54.2 began running from the district court's April 6, 1994 order. Since plaintiffs filed their supplemental application on May 5, 1994, twenty-nine days after the clerk entered the district court's order, the supplemental application was timely under Local Rule 54.2.

■ Rule 59(e) is of no greater help to Local 58. In *White*, the Supreme Court specifically held that a request for attorneys' fees raises legal issues collateral to the underlying cause of action, "issues to which Rule 59(e) was never intended to apply." *White*, 455 U.S. at 451, 102 S.Ct. at 1166. The Court noted that, during the course of litigation, there are often numerous orders which might appear to qualify as final orders under the Federal Rules of Civil Procedure. *Id.* at 453, 102 S.Ct. at 1167. The *White* Court feared that, if applications for attorneys' fees were included within the ambit of Rule 59(e), cautious litigators would file fee applications "in conjunction with nearly every interim ruling[ ]" to ensure that they did not forfeit their right to fees. *Id.*

Thus, *White* makes clear that an application for fees and costs generally is not a Rule 59(e) motion. Also, we believe that the fact that this application was supplemental to another fee application does not transform the request into a Rule 59(e) motion. The supplemental application did not ask the district court to alter or reconsider its original order granting fees; it merely sought to recover for the time period not addressed in the original application. If we adopted Local 58's reading of Rule 59(e), litigants would be

forced to file a supplemental application in conjunction with their original application. At the time of filing the original application, the counsel for the applicant, who had not yet been declared a prevailing party, could not know or itemize the amount of time or expense he or she will incur litigating the prevailing party question. Therefore, this approach would seem to be contrary to the Supreme Court's analysis in *White*.

■ Local 58's last jurisdictional objection is that the district court did not have authority to award fees to prevailing parties under Title I of LMRDA. In *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973), the Supreme Court held that, under Title I of LMRDA, a district court possessed the discretion to award fees to a union member whose lawsuit produced a "common benefit" shared by the membership at large. Justice Brennan, writing for a unanimous Court, held that awarding fees to a prevailing union member merely spreads the burden of the litigation more equitably. *Id.* at 9, 93 S.Ct. at 1948. He acknowledged that Title I did not specifically authorize an award of fees but concluded that a district court possessed the equitable power to award fees in the absence of congressional authorization. *Id.* at 8–9, 93 S.Ct. at 1947–48. Though Congress specifically provided for an award of fees under the provisions of Title II, LMRDA § 201, the Court rejected the union's argument that Title II indicated congressional intent to foreclose fees in Title I. *Id.* at 10–11, 93 S.Ct. at 1948–49. Thus, *Hall* held that, in the absence of congressional guidance, a district court possessed the authority to award fees to a prevailing union member under Title I of LMRDA. *Id.*

The union relies on *Stomper v. Amalgamated Transit Union, Local 241*, 27 F.3d 316 (7th Cir.1994). In *Stomper*, the United States Court of Appeals for the Seventh Circuit held that a union member, who failed to obtain a favorable *judgment*, could not be awarded attorneys' fees and costs under Title II of LMRDA. *Stomper*, 27 F.3d at 320. Writing for the majority, Judge Easterbrook noted that, unlike Title I, Title II contained express authorization for an award of fees and costs. *Id.* at 318. LMRDA § 201(c)

states that a district court has the discretion to award fees "in addition to any *judgment* awarded the plaintiff or plaintiffs." 29 U.S.C. § 431(c) (emphasis added). Thus, Judge Easterbrook concluded that Congress limited an award of fees to those plaintiffs who obtained favorable judgments. *Stomper*, 27 F.3d at 320. Since the union member in *Stomper* sought an award of fees based on a "catalyst" theory rather than a judgment on the merits, the Seventh Circuit denied his application for fees and costs. *Id.* In reaching this conclusion, Judge Easterbrook explicitly distinguished *Hall* and rejected plaintiff's argument that *Hall* preempted the field with regard to LMRDA actions. *Id.* at 319.

*Hall* dealt with actions brought under Title I of LMRDA and we have followed *Hall's* reasoning in Title I cases. *E.g., Farrell v. International Bhd. of Teamsters, Airline Div.*, No. 89–1425, 1990 WL 38176, at *2 (6th Cir. Apr. 4, 1990) (unpublished opinion); *Knox County Local, Nat'l Rural Letter Carriers' Ass'n v. National Rural Letter Carriers' Ass'n*, 720 F.2d 936, 938 (6th Cir.1984). *Stomper*, on the other hand, involved actions brought under Title II of LMRDA. *Stomper's* holding turned on the fact that, in Title II, Congress limited the award of fees to plaintiffs who obtain favorable *judgments*. Therefore, we believe *Hall* is still good law and authorizes an award of fees under Title I based on a common benefit analysis.

Since all of Local 58's jurisdictional objections fail, this court has appellate jurisdiction to resolve the merits of plaintiffs' original and supplemental requests for fees and costs.

### Part B—Fee Award

■ Under *Hall*, a union member can recover fees and costs if the union member's lawsuit produces a common benefit for the membership at large. *Hall*, 412 U.S. at 9, 93 S.Ct. at 1948. It is settled law that a plaintiff need not prevail on the merits to qualify as a "prevailing party" for the purpose of an award of attorneys' fees and costs. *E.g., Hewitt v. Helms*, 482 U.S. 755, 760, 107 S.Ct. 2672, 2675–76, 96 L.Ed.2d 654 (1987); *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653 (1980). If the lawsuit is a "catalyst" for a pretrial settlement

or, if a defendant changes its conduct in a manner that redresses plaintiff's grievances, then plaintiff may establish prevailing party status. *Hewitt,* 482 U.S. at 760–61, 107 S.Ct. at 2675–76. In applying the catalyst theory to requests for attorneys' fees under Title I of LMRDA, our inquiry is two-fold. *Farrell,* No. 89–1425, 1990 WL 38176, at *2 (following *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir. 1978)). First, plaintiff must show that its lawsuit was "causally related" to the relief obtained. *Id.* Second, plaintiff must demonstrate that the relief obtained has "some minimum basis" in law. *Id.*

■■■■ We review a district court's award of attorneys' fees for abuse of discretion. *E.g., id.* at *1; *Loudermill v. Cleveland Bd. of Educ.,* 844 F.2d 304, 308–309 (6th Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 363, 102 L.Ed.2d 353 (1988). Under this standard, the district court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo. Perket v. Secretary of Health & Human Servs.,* 905 F.2d 129, 132 (6th Cir.1990).

The principal issue on the merits is whether the district court correctly concluded that the union's action was "causally related" to the plaintiffs' LMRDA lawsuit with respect to the by-law amendment and the union's reversion to a "modified" CIR clause in the 1992 CBA.[6]

■■■■ The catalyst inquiry is merely an attempt to determine the defendant's motive for taking actions that provide the plaintiff some or all of the relief requested in its lawsuit. When there is a settlement, the agreement itself provides direct evidence that defendant took the action in consideration for plaintiff dismissing its suit. *Cf.*

*Maher,* 448 U.S. at 129, 100 S.Ct. at 2574–75. Where there is no settlement and a defendant takes action that moots the plaintiff's lawsuit, the evidence of motive is usually circumstantial. *See Taylor,* 657 F.Supp. at 567–68. Therefore, "the sequence or chronology of events is an important factor in determining whether the 'plaintiff's actions were a significant catalyst or a substantial factor in causing defendants to act.'" *Farrell v. International Bhd. of Teamsters, Airline Div.,* No. 89–1425, 1990 WL 38176, at *2 (6th Cir. Apr. 4, 1990) (unpublished opinion) (quoting *Luethje v. Peavine Sch. Dist. of Adair County,* 872 F.2d 352, 354 (10th Cir. 1989)).

■■■■ Relying on *Farrell,* the district court held that the by-law amendment "was proposed and enacted shortly after and as a direct response to the litigation. The substance of the amendment evidences the fact that [p]laintiffs' suit was responsible for its enactment." We do not find *Farrell* controlling in the case at bar. When a union changes its conduct shortly after a member files suit and the conduct moots the plaintiff's action, *Farrell* allows a reasonable fact finder to conclude that the lawsuit compelled the union's change of heart. However, "[w]hile chronological evidence is certainly a consideration in cases of this sort," we have repeatedly held that such circumstantial evidence "is not conclusive." *Citizens Coalition for Block Grant Compliance, Inc. v. City of Euclid,* 717 F.2d 964, 967 (6th Cir.1983) (citation omitted). In this case, for instance, plaintiffs' counsel conceded at oral argument that the lawsuit did not *compel* Local 58 to change its by-laws. In response to a question from the bench, counsel explained that the LMRDA action was causally related to

---

6. In its original brief, Local 58 did not contest the second prong of the *Nadeau* test (*i.e.,* whether there was some minimum basis in law for the relief obtained). In its reply brief, however, Local 58 suggests that the district court erred when it found that plaintiffs' requested relief had a minimum basis in law. The crux of Local 58's argument is that plaintiffs never succeeded in proving their LMRDA claims. Local 58 notes that the district court granted it summary judgment, finding that Local 58 did not violate plaintiffs' rights under Title I of LMRDA. Since we remanded solely for the purposes of requiring the district court to make specific findings of fact,

Local 58 argues that there is no evidence that the LMRDA claims had a basis in law.

The district court summarily concluded that plaintiffs satisfied the second prong of the test because our remand implicitly acknowledged the viability of the LMRDA claims. We found remand necessary because there was conflicting testimony about genuine issues of material fact. *Brown,* 936 F.2d at 254. If there were testimony in the record which, if credited, supported recovery under Title I of LMRDA, then plaintiffs' request for injunctive relief had a "minimum basis in law."

the enactment of the by-law amendment because it made the membership aware of the need for special call meetings to discuss changes in future contracts. In other words, the lawsuit sensitized the rank and file and affected the proposal's success at the membership meeting on August 22, 1989.

We do not believe, however, that the catalyst theory was intended to allow the recovery of fees for lawsuits that function as a kind of political advertisement. The Supreme Court has made clear that a lawsuit is a catalyst when "the defendant, *under pressure of the lawsuit,* alters his conduct ... towards the plaintiff that was the basis for the suit." *Hewitt,* 482 U.S. at 761, 107 S.Ct. at 2676 (emphasis added). In this case, plaintiffs admit that litigation pressure did not cause Local 58's change of conduct. The membership adopted the by-law amendment through the normal operation of the democratic process. This may well have come about regardless of the lawsuit. We can find no evidence that the leadership of Local 58 urged the amendment's passage as a way of avoiding liability, and we believe there is no basis for concluding that plaintiffs' lawsuit *compelled* or caused Local 58 to change its conduct in a manner that would support a catalyst analysis. *Cf. Omaha Tribe of Neb. v. Swanson,* 736 F.2d 1218, 1221 (8th Cir. 1984); *City of Euclid,* 717 F.2d at 967. Accordingly, we believe the district court was clearly erroneous when it determined that plaintiffs' lawsuit was causally related to the adoption of the by-law amendment.

As for the modified CIR provision in the 1992 CBA, the district court rejected the magistrate's conclusion that there was no evidence linking the lawsuit to the new contract. The district court found that the lawsuit "was a necessary and controlling factor in Defendant's reinsertion of the modified CIR." The court concluded that, after remand, Local 58 was facing an imminent threat of legal action, and also found that Local 58's change of position on the CIR

clause mooted plaintiffs' LMRDA claims and that, but for the voluntary action, the case would have proceeded to trial. Finally, the court found correspondence between plaintiffs and the IBEW probative of Local 58's motive for changing its position.

Local 58 responds that the district court's findings are unsupported by the evidence. As with the amendment to the by-laws, Local 58 points out that it was not under a threat of legal action since it successfully obtained summary judgment on plaintiffs' LMRDA claims and was prepared to defend itself after remand. With respect to the correspondence between the IBEW and plaintiffs, Local 58 notes that the IBEW was not a party to the litigation when these negotiations took place. Since Local 58 was not bound by the IBEW's representations, Local 58 argues that the correspondence has no probative value. Local 58 also notes that the only correspondence between the parties indicates that Local 58 never agreed to the terms of the dismissal and, in fact, requested that plaintiffs dismiss with prejudice.

The plaintiffs' lawsuit, in our view, did not actually vindicate any of the rights or achieve any of the relief plaintiffs sought. The referendum was not set aside. Plaintiffs rested their action on alleged LMRDA rights.

■ The catalyst theory was developed largely by the First Circuit in *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978). The theory has two prongs.[7] The first is a factual inquiry and asks whether plaintiffs' efforts were a "necessary and important factor in achieving the improvements?" The second prong is a legal inquiry and seeks to determine whether defendant's actions were gratuitous or whether plaintiffs' suit had some merit. This court adopted the *Nadeau* formulation in *Johnston v. Jago,* 691 F.2d 283 (6th Cir.1982).

Did plaintiffs' suit push defendant into making changes in its policies or practices? To help answer these questions, and specifi-

7. We note the Fourth Circuit has held that the Supreme Court's decision in *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), eliminated the catalyst test. *S–1 and S–2 v. State Bd. of Educ.,* 21 F.3d 49 (4th Cir.1994) (en banc). This latter reading, however, has

been rejected by other circuits which have considered the issue. *See Zinn by Blankenship v. Shalala,* 35 F.3d 273 (7th Cir.1994) (collecting cases). In addition, this circuit has used the catalyst test in other cases since *Farrar.*

cally in answering the first prong of the *Nadeau* test, a court must compare the changes made by the defendant to the relief sought in the plaintiffs' complaint or the right which the plaintiffs sought to vindicate through litigation.

The members of Local 58 proposed the amendment to their by-laws on July 18, 1989, at the first Local 58 meeting after plaintiffs filed their suit. The amendment required special meetings to provide additional notice and information regarding changes in future CBAs. The membership adopted the amendment on August 22, 1989. This amendment, however, does not vindicate any of the rights or achieve any of the relief plaintiffs sought in their complaint. The by-laws were not the subject of the suit. Nor was there any claim that amendments to the by-laws were impeded in any way by union officials. They could have been amended the day before the suit as the day after the suit.

Merely requiring extra meetings does not achieve plaintiffs' goal of disclosure. No one disputes that some elements of the negotiations were discussed at union meetings or that the union did draw its members' attention to some of the changes in the proposed CBA. Plaintiffs' dispute is with the information, or lack thereof, provided by the union leadership. Most importantly, the lawsuit did not change in any way the manner in which the members could adopt changes in the by-laws. To be a catalyst, then, the suit must cause the defendant to act. Here, the plaintiffs themselves obtained the relief for which they seek to be paid by amending the by-laws—something that was in their power all along. The ability of plaintiffs to do so was not changed by the lawsuit. The benefit conferred on the union by plaintiffs' change of their own contract is too remote to be considered a catalyst to justify the award of fees.

Taking into account the sequence of events, therefore, we find the magistrate judge not to have committed error in concluding that plaintiffs failed to carry their burden of proving that the existence of the 1989 suit was causally related to the negotiation of the modified CIR provision in 1992. The 1989 LMRDA action did *not* request a

reversion to a modified CIR clause. Thus, we believe that there is insufficient evidence to conclude that those who negotiated the modified CIR provision in 1992 were sufficiently influenced by the 1989 suit.

Consequently, we hold that we have jurisdiction to decide the fee question, but that the district court was clearly erroneous in concluding that plaintiffs' lawsuit was a necessary, controlling, and causative factor in Local 58's decision to reinstate the modified CIR language. As a result, the district court abused its discretion when it awarded plaintiffs' fees and costs. The district court was clearly erroneous also in concluding that the lawsuit was a causative factor in the decision to change the by-law. Accordingly, we **REVERSE** the decision of the district court.