**Barbara Ann TURNER,
et al., Plaintiffs,**

v.

**Reginald WILKINSON,
et al., Defendants.**

**No. C2–99–289.**

United States District Court,
S.D. Ohio,
Eastern Division.

Dec. 30, 1999.

Scott T. Greenwood, Greenwood & Associates, Cincinnati, OH, for Barbara Ann Turner, plaintiff.

Todd Robert Marti, Ohio Attorney General, Corrections Litigation, Columbus, OH, for Reginald A. Wilkinson, Patricia Andrews, Jane Does 1–5 and John Does 1–5.

## OPINION AND ORDER

DLOTT, District Judge.

This action was filed by Barbara Ann Turner and Sean Turner, who sought declaratory and injunctive relief after the defendants, custodians of Barbara Ann Turner, who is an inmate, first granted, and then revoked, permission to allow Sean Turner to be present at the birth of the couple's child. Shortly after the action was filed, the Court granted a temporary restraining order, and the Court has since been advised that Sean Turner was permitted to be present during the birth of his child. The parties have now suggested that the underlying case is moot, and plaintiffs have moved for an award of attorneys' fees under 42 U.S.C. § 1988. The latter motion is fully briefed and ripe for decision. For the following reasons, plaintiffs will be awarded attorneys' fees as requested.

## I.

The essential facts of this case consist of little more than its procedural history. On March 20, 1999, plaintiffs filed a complaint asserting that Barbara Turner was confined at the Franklin Pre–Release Center and was nine months pregnant. Sometime before March 11, 1999, Barbara Turner obtained permission for her husband, plaintiff Sean Turner, to be present in the delivery room so long as a letter was obtained from the sentencing judge supporting her request. The letter was received and permission was granted. According to plaintiffs, other inmates have been granted permission under similar circumstances. However, Barbara Turner was interviewed

**700**

by a reporter for the *Cincinnati Enquirer* regarding her experiences as an inmate, and after the interview occurred and was made known to prison officials, the previously-granted permission for Sean Turner to be present during the birth of their child was revoked. Repeated efforts after March 11, 1999 to have that decision reversed were unsuccessful. Consequently, plaintiffs filed this lawsuit and requested a temporary restraining order. · They attempted to give notice to the defendants and represented to the Court that, as of the date of filing, March 20, 1999, at 9:35 p.m., they still had been unsuccessful in obtaining a reversal of the defendants' decision. At 10:10 p.m. on March 20, 1999, the Court granted the TRO (file document # 3).

■ The parties have submitted a few evidentiary materials in connection with the motion for attorneys' fees, including two affidavits from persons who allegedly spoke to the governor concerning this matter. As the Court notes below, those affidavits represent inadmissible hearsay on any issues which are of importance to the Court's decision on the motion for attorneys' fees. Consequently, the only other fact which appears definitively from the record is that Barbara Ann Turner has now given birth and that Sean Turner was present when that occurred. As a result, the Court concurs with plaintiffs' suggestion (file document # 14) that this case is moot, and the action will be dismissed on that basis. The only remaining issue is the matter of attorneys' fees.

## II.

The application for attorneys' fees is straightforward. It asserts that plaintiffs are prevailing parties in this action and are entitled to an award under 42 U.S.C. § 1988 either because, by virtue of the temporary restraining order, they achieved all or substantially all of the relief which they sought when the action was filed, or, alternatively, that the filing of this action and the obtaining of the TRO were catalysts for the reversal of the defendants' decision not to permit Sean Tur-

ner to be present during the birth of his child. The attorneys' fees application is supported by declarations from the attorneys who performed services. The total amount sought is $5,393.05, charged at $195.00 per hour for attorney Scott T. Greenwood, $175.00 per hour for attorney Raymond Vasvari, and $135.00 per hour for attorney Gino Scarselli. An affidavit from John S. Marshall, an attorney who practices in Columbus, Ohio, supports the reasonableness of these hourly rates.

In opposing the motion for attorneys' fees, the defendants have not suggested that any of the hourly rates are unreasonable or that any of the time spent was unnecessary. Rather, they raise a number of factual and legal arguments against any award of attorneys' fees, and also contend that the amount sought exceeds the maximum allowable under 42 U.S.C. § 1997e(d).

## III.

Little discussion of the general principles relating to awards of attorneys' fees under 42 U.S.C. § 1988 is needed. The Court has articulated those principles before. *See, e.g., Putnam v. Davies,* 960 F.Supp. 1268 (S.D.Ohio 1997), *aff'd* 149 F.3d 1184 (6th Cir.1998). In this case, there is no issue about the reasonableness of the hourly rates charged or the hours expended, and the lodestar calculations are a matter of arithmetic. Consequently, the Court will address the issues of whether (1) plaintiffs have shown an entitlement to an award of fees, and (2) whether, if they are entitled to fees, those fees are subject to the maximum set forth in 42 U.S.C. § 1997e(d).

### A. *Entitlement to Fees.*

■ Plaintiffs' primary argument in support of their fee application is that the filing of the litigation and the obtaining of a temporary restraining order was a catalyst for the defendants' decision to reverse their earlier position, which itself was a reversal of an even earlier-stated position

that Sean Turner would be permitted to attend the birth of his child. The "catalyst" theory permits a party to be considered as the "prevailing party" under 42 U.S.C. § 1988 even if the party did not ultimately obtain a decision on the merits in that party's favor. *See Putnam, supra; see also Webster v. Sowders,* 846 F.2d 1032 (6th Cir.1988).

■ *Webster* clearly recognized that the catalyst theory is an alternative theory for recovering attorneys' fees, and that it is not necessary, in order to recover under that theory, that the parties seeking fees have obtained relief on the merits. Rather, under the catalyst theory, if the party requesting fees can demonstrate both the factual predicate for an award—that the filing of the lawsuit was causally related to the defendants' change in position—and the legal predicate—that there was "some minimum basis in law for the relief secured," *Sowders,* 846 F.2d at 1037, quoting *Johnston v. Jago,* 691 F.2d 283, 286 (6th Cir.1982), an award of fees may be made. With respect to the "minimum basis in law" standard, the Court noted that it was required to decide only if the claim asserted was groundless, or whether it had arguable merit, and not that the plaintiff would actually have prevailed on the claim.

■ Other cases have flushed out the "cause in fact" prong of the catalyst theory. In *Brown v. Local 58, Int'l Brotherhood of Electrical Workers,* 76 F.3d 762 (6th Cir.1996), the Court noted that evidence as to whether the filing of a lawsuit was a "cause in fact" of a change in the defendant's position is usually circumstantial, and that the Court is entitled to consider the chronology of events as important but not determinative on that issue. *Id.* at 771. Essentially, the Court's inquiry is to determine if the defendants' action occurred as a result of the pressure of the lawsuit itself. *Id.* at 772. Other pertinent questions which the Court should ask are whether the action which the defendants took, and which resolved the matter without the need for an adjudication on the merits, had been set in motion prior to the

filing of the lawsuit and whether it would have occurred in any event. *See Payne v. Board of Education,* 88 F.3d 392 (6th Cir. 1996).

■ Here, the plaintiffs' verified complaint indicates that as of the time of filing, in the late evening of Saturday, March 20, 1999, all efforts to persuade the defendants to rescind their decision prohibiting Sean Turner from being present at the birth of his child had been unsuccessful, and that their efforts to bring the filing of the lawsuit to the attention of appropriate officials either of the Department of Rehabilitation and Correction or the Ohio Attorney General's Office had been rebuffed. It is unquestioned that after the Court granted the TRO, Sean Turner was permitted to be present at the birth of his child. Certainly, from this evidence, the Court may draw a factual inference that the filing of the lawsuit and the granting of the TRO played a role in bringing about Sean Turner's presence when his child was born.

■ In opposition, the defendants have submitted affidavits from two individuals, J. Douglas Moormann, Governor Taft's Executive Assistant for Criminal Justice and Public Safety, and Mary Anne Sharkey Dirck, Communications Director in the Governor's Office. Both of those affidavits recount conversations which the affiants had with representatives of the Department of Rehabilitation and Correction and with the Governor. If the representations in those affidavits are accepted as true, the Governor first became concerned about this matter as a result of reading an article which appeared in the *Cincinnati Enquirer* on Friday, March 19, 1999, and he asked his representatives to check into the matter to find out the justification for the DRC's decision. One of the two affidavits contains a hearsay statement from the Governor indicating that he had decided, prior to the filing of the lawsuit, that he would ask DRC to change its mind. There is, however, no evidence in the record that this decision (assuming it was made) was ever communicated to DRC (or to anyone

else) prior to the filing of the lawsuit or prior to the Court's issuance of the temporary restraining order. Additionally, the affidavit containing this statement is hearsay on the issue of when the Governor actually came to the final conclusion that he would ask DRC to reconsider its position. As a result, there is no credible evidence in the record opposing the inference to be drawn from undisputed chronological occurrences set forth in the plaintiffs' verified complaint, the Court's file, and subsequent suggestion of mootness. As a result, the Court concludes that, on the basis of this record, that plaintiffs have succeeded in demonstrating a causal connection between the filing of the lawsuit, the issuance of the TRO, and the fact that Sean Turner was permitted to be present during the birth of his child. That is enough to satisfy the first prong of the catalyst test.

With respect to the second prong, defendants assert that relief can be granted under this test only if the injunction requested by the plaintiffs was "mandated by law." That, of course, is inconsistent with *Webster* and its formulation of the "minimum basis in law" test.

As plaintiffs correctly point out, one of the bases for the relief requested was a violation of plaintiff Barbara Turner's First Amendment rights—i.e., that she was retaliated against for having spoken with representatives of the press about prison conditions. The complaint also has equal protection overtones, affirmatively pleading that other similarly-situated inmates have been permitted to have their spouses present during a birth under identical circumstances. While it is true that courts have generally regarded institutional safety concerns as legitimate bases for decisions affecting issues such as procreation or child birth, the Court certainly cannot say that the claims advanced by these plaintiffs, and particularly the retaliation and equal protection claims, are frivolous on their face, or that they do not have some minimum basis in law. Indeed, had the Court believed that the claims were absolutely frivolous and there was no

chance of prevailing on the merits, a TRO would likely not have been issued. Consequently, the second prong of the catalyst test has been satisfied as well, and plaintiffs have demonstrated an entitlement to attorneys' fees.

Before addressing the issue of the amount of fees, however, the Court must address some additional arguments raised by the defendants. Defendants assert, citing *Rhodes v. Stewart,* 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988), that fees cannot be awarded here because the TRO issued by this Court was fatally flawed and was beyond the jurisdiction of the Court at the time it was entered. Given the fact that the Court has concluded that the filing of the lawsuit itself was a catalyst for change, whether the Court had jurisdiction to issue the TRO is not really pertinent. Nonetheless, all of the arguments advanced by defendants under this heading are meritless.

■ First, defendants assert that the case was moot when the TRO was issued. On the record of this case, the Court cannot so conclude. The only thing that conceivably occurred between the defendants' decision to rescind permission to allow Sean Turner to be present at the birth of his child and the filing of the lawsuit is an internal and unannounced decision by the governor to ask that the decision be reversed. There is no indication that such a decision was ever communicated or implemented prior to the filing of the suit or the issuance of a TRO and, even assuming that the governor made such a decision (and the only evidence that he did is inadmissible hearsay), that is not enough to render the matter moot. Clearly, there was a live controversy when plaintiffs filed the case. Even if that were not so, it has long been held that voluntary cessation of allegedly unlawful conduct, leaving the defendants free to resume that conduct as soon as the lawsuit is dismissed, is not enough to moot an action. *See United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). This case is now

moot because the birth has occurred, but it was not moot at the time the TRO was issued.

■ Second, defendants assert that a TRO may not be issued in a case brought by a prisoner unless the Court makes a specific finding both that there has been a violation of a federal right and that the relief granted is no broader than necessary to cure the violation of that right. *See* 18 U.S.C. § 3626(a)(1). It is doubtful that the statutory section cited by defendants applies to temporary restraining orders. Section 3626(a)(1) is entitled "prospective relief," and uses that term exclusively, whereas § 3626(a)(2) is entitled "preliminary injunctive relief" and applies by its terms to both preliminary injunctions and temporary restraining orders. The pertinent language of § 3626(a)(2) indicates that "[i]n any civil action with respect to prison conditions, to the extent otherwise authorized by law, the Court may enter a temporary restraining order or an order for preliminary injunctive relief." Although the statute then provides certain restrictions on preliminary injunctive relief, it provides no restrictions on a temporary restraining order. Even assuming that the requirement of § 3626(a)(2) that injunctive relief be "narrowly drawn, extend no further than necessary to correct the harm the Court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm," applies to temporary restraining orders as well as preliminary injunctions, those prerequisites were met here. The TRO was narrowly drawn, extended only so far as necessary to correct the harm of having Sean Turner not be present at the birth of his child, and was the least intrusive means necessary to accomplish that goal. Finally, as noted below, there is a significant question about whether this case is subject to any provisions of the PLRA, including § 3626, because one of the two plaintiffs is not a prisoner. For all of these reasons, the Court concludes that this "jurisdictional" argument is also unfounded.

The third argument advanced by defendants requires little discussion. Defendants assert that this Court had not acquired jurisdiction over the defendants by means of service of either a summons or complaint prior to the issuance of the TRO, and that a court may not issue injunctive relief against a person who has not been properly served with process.

■ The cases cited by defendants do not support such a broad claim. They deal with a situation where personal jurisdiction was lacking, not because of any defect in service of process, but because of a lack of a constitutionally-required minimum contacts with the forum state. Further, as plaintiffs correctly point out, if the Court were to accept defendants' argument, an *ex parte* temporary restraining order could never issue because the Court would have to wait until process was served on the defendants before acting. In a case where defendants are either not entitled to notice or where efforts at notice are unsuccessful, defendants would have the Court read into Rule 65 an additional requirement that the Court take no action until the defendants have been located, served with a summons and complaint, and been given an opportunity to respond. That would essentially vitiate Rule 65's authority for the issuance of temporary restraining orders. Consequently, the Court clearly had jurisdiction to enter the TRO.

### B. *Amount of Fees.*

The only issue with respect to the amount of fees is whether the fee cap set forth in 42 U.S.C. § 1997e(d) applies. That statutory subsection limits awards of attorneys' fees in "any action brought by a prisoner" to 150 percent of the rate authorized under 18 U.S.C. § 3006A(d). Although defendants incorrectly cite those rates as $40 per hour for out-of-court time and $60 per hour for in court time (they are now $45 and $65, respectively, based on appropriations, but are authorized at $75 per hour), if the Court found 42 U.S.C. § 1997e(d) to be applicable here, it would

cap the fees requested. (Plaintiffs' argument that this provision does not apply to them because they were not appointed in this case under § 3006A simply misreads the statute and will not be considered by the Court).

The crucial issue is whether this case is an "action brought by a prisoner" within the meaning of § 1997e. The Court has found no cases precisely on point. The only reported case dealing with related procedural issues is *Montcalm Publishing Corp. v. Commonwealth of Virginia,* 199 F.3d 168 (4th Cir.1999), which held that once a suit is filed by prisoners, the fact that a non-prisoner intervenes at a later date does not change the character of the case, and the intervenor is therefore bound by § 1997e(d)'s limitation on attorneys' fees.

*Montcalm* makes sense in a case where the nature of the case is known at the time the intervenor's petition is filed, and the intervenor is therefore on notice that there will be a cap on attorneys' fees if the intervenor is successful on his or her claims. (The result "is dictated by [intervenor's] decision not to bring an independent action but to intervene in the prisoners' action," *id.* at 172) By contrast, this case was initially filed both by a prisoner and a nonprisoner. Since not all of the original plaintiffs were prisoners, the Court does not believe that this case can properly be characterized as a suit "brought by a prisoner ...," see 42 U.S.C. § 1997e.

Even if it can be so characterized, however, the Court believes that the presence of a non-prisoner plaintiff with non-frivolous claims makes it appropriate to determine whether the attorneys' fees are severable, so that a cap could be applied on those fees requested on behalf of Barbara Turner but not on behalf of Sean Turner. In other contexts, the Court of Appeals has recognized that the trial court may have to deal with the issues of separability in attorneys' fees petitions, particularly whether time spent on the litigation as a whole can be allocated among successful and non-successful claims so that a

proportionate attorneys' fees award might be possible. *See, e.g., Wooldridge v. Marlene Industries Corp.,* 898 F.2d 1169, 1174–75 (6th Cir.1990). *Wooldridge* teaches that where such separation cannot be made, it is improper to reduce a fee petition on grounds that only partial success was achieved.

In this case, the Court perceives of no logical way to separate the attorneys' fees expended on behalf of the two plaintiffs. Both plaintiffs advanced non-frivolous claims for relief, and all of the work done was intended to address a single remedy benefitting both. Under these circumstances, the Court concludes that the cap does not apply and that attorneys' fees in the amount requested should be awarded.

IV.

Based upon the foregoing, this case is DISMISSED AS MOOT. Plaintiffs' motion for attorneys' fees (file document # 15) is GRANTED. Plaintiffs are awarded the sum of $5,393.05 in attorneys' fees and $350.62 in litigation expenses, to be paid within 30 days of the date of this order.