

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-11-2000

# United States v Eleven Vehicles

Precedential or Non-Precedential:

Docket 99-1241

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation
"United States v Eleven Vehicles" (2000). *2000 Decisions.* Paper 5.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/5

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 7, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1241

UNITED STATES OF AMERICA

v.

ELEVEN VEHICLES, THEIR EQUIPMENT AND
ACCESSORIES; ALL MONIES AND/OR INTERESTS IN
CERTAIN ACCOUNTS IN BANKS OR CERTAIN OTHER
FINANCIAL INSTITUTIONS; ONE BUSINESS; ANY & ALL
PROCEEDS, FROM THE SALES THEREOF

ROBERT CLYDE IVY; WAYNE K. RADCLIFFE; TERRANCE
P. FAULDS; IRENE IVY; KLEINBARD, BELL & BRECKER;
MELLON BANK, N.A.; LEBANON VALLEY NATIONAL
BANK; MARY E. IVY; GERALD SCHULER; CLYDE IVY;
IRENE IVY; ELAINE K. RADCLIFFE;
MICHELLE E. RADCLIFFE,

        Claimants in District Court

Robert Clyde Ivy and Irene Ivy,

        Appellants

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 91-cv-06779)
District Judge: Honorable Eduardo C. Robreno

Argued: October 1, 1999

Before: NYGAARD, ALITO and ROSENN, Circuit Judges.

(Filed January 7, 2000)

Charles H. Ivy, Esquire (Argued)
Law Office of Charles H. Ivy
20 South Prado Street, N.E.
Atlanta, GA 30309-3309

 Counsel for Robert Clyde Ivy and
 Irene Ivy

Catherine L. Votaw, Esquire (Argued)
J. Alvin Stout, III, Esquire
Michael R. Stiles, Esquire
Office of the United States Attorney
615 Chestnut Street
Suite 1250 Philadelphia, PA 19106

 Counsel for United States of
 America

OPINION ANNOUNCING THE
JUDGMENT OF THE COURT

ROSENN, Circuit Judge.

This appeal presents a recurring problem concerning the amount of fees due counsel under a fee-shifting statute. The case also presents the grim reality feared by the Supreme Court of the United States when it warned that a "request for attorney's fees should not result in a second major litigation." Hensley v. Eckhart, 461 U.S. 424, 437 (1983). More specifically, we are presented with a challenge to the adequacy of a supplemental award of attorney fees and expenses for work performed in post-judgment fee litigation in a civil forfeiture proceeding initiated by the United States in 1991 in the District Court for the Eastern District of Pennsylvania. After securing the court-ordered release of property seized by the United States Government because it was thought to be involved in illegal money laundering activities, appellants sought attorney fees and expenses incurred in seeking the property's release pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. S 2412(d)(1)(A). In its fourth published opinion in this case, the district court awarded the appellant $142,643.26 in attorney fees and $7963.51 in expenses

2

covering services through September 26, 1996. See United States v. Eleven Vehicles, 966 F. Supp. 361 (E.D. Pa. 1997) [hereinafter Eleven Vehicles IV]. 1 Subsequently, the appellants filed a supplemental request for $23,333.81 in attorney fees and $560 in expenses incurred after September 26, 1996 in litigating their entitlement to fees and expenses for the underlying forfeiture litigation. The court awarded the appellants $5000 in attorney fees plus $560 in expenses. Disappointed, the appellants, Robert Clyde Ivy and Irene Ivy, timely appealed. We remand.

I.

In October 1991, the Government filed a complaint for forfeiture of the assets of numerous parties, including Appellants Robert Clyde Ivy and Irene Ivy ("the Ivys"). Over the next four-and-a-half-years, the trial court ordered the piece-by-piece release of all the Ivys' seized properties pursuant to partial grants of summary judgment in October 1993 and September 1995, and a final dismissal of the Government's forfeiture complaint, with prejudice, in March 1996.2 In dismissing the case, the district court expressly retained jurisdiction for the purpose of considering the Ivys' request for attorney fees and expenses pursuant to the EAJA, and the Government's motion for a "certificate of reasonable cause" under 28 U.S.C. S 2465. The certificate of reasonable cause, if granted, would have protected the individuals who actually seized the property at issue from liability to the property owners, and would prevent the claimants from recovering costs from the Government, though not fees or expenses.

On August 30, 1996, the district court granted the requested certificate of reasonable cause. It held, however, that the Ivys were entitled to attorney fees at a rate of $112.28 per hour and to expenses. Eleven Vehicles III, 937

_____

1. The district court had previously found that the appellants were entitled to attorney fees and expenses under the EAJA. See Eleven Vehicles III, 937 F. Supp. 1143 (E.D. Pa. 1996).

2. The district court had jurisdiction over this forfeiture action pursuant
to 28 U.S.C. SS 1345 and 1355, and 18 U.S.C.SS 981(a)(1)(A), 981(a)(1)(C), and 981(f).

F. Supp. at 1149–56. In ruling on the Ivys' entitlement to fees and expenses, the court found that the Ivys were a "prevailing party" in the litigation, the Government's litigating position had not been "substantially justified," and no "special circumstances" existed that would render an attorney fee award unjust.3 Id. at 1150–55. The district court ordered the Ivys to submit an itemized statement of counsel's hours and rates by September 30, 1996. Id. at 1156. The Ivys submitted the required materials on that date. These materials covered work performed on the case through September 26, 1996. The Government filed objections to some of these requested fees.

The Government filed a motion for reconsideration of the award of attorney fees and expenses. The Ivys filed a motion for reconsideration of the grant of a certificate of reasonable cause and the failure to grant attorney fees at market rate. The Ivys also filed a motion requesting the court to adjust the hourly billing rate of $112.28, established by the court for calculating the amount of attorney fees owed to the Ivys, upward to reflect cost of living. The parties filed responses to each other's motions.

_____

3. The EAJA provides in pertinent part:

> (A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

> (B) A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified.

28 U.S.C. S 2412(d)(1).

In November 1996, the Ivys apparently gave the Government and the court notice that they intended at some future date to seek attorney fees and expenses for work performed after September 26, 1996.

On May 30, 1997, the district court denied the Government's motion for reconsideration as merely a "rehash" of earlier arguments in the litigation. As for the Ivys' motion for reconsideration of the grant of the certificate of reasonable cause and the court's denial of their entitlement to attorney fees at market rates, the court also, after careful consideration, denied it as essentially a restatement of their earlier arguments. Eleven Vehicles IV, 966 F. Supp. at 363–66. However, the court granted the Ivys' request for a cost of living adjustment, revising the compensable hourly billing rate upward to $120.68. Id. at 366–67. Finally, the court accepted one of the Government's narrow objections to the fees requested by the Ivys, rejected the remainder of the Government's objections, and granted attorney fees for 1182 hours of work in the amount of $142,643.76, and expenses in the amount of $7,963.81. Id. at 367–69.

On August 27, 1997, the Ivys submitted to the district court a supplemental request for attorney fees and expenses covering work performed after September 26, 1996. In this application, the Ivys requested $23,333.81 in fees as compensation for 190.9 additional hours work, and $560.00 in expenses. The Government opposed this supplemental request, arguing that the requested supplemental payment was not authorized by any law, and was in essence a motion under Federal Rule of Civil Procedure 59(a) to alter or amend the May 30, 1997 award. Because such a request must be filed within 10 days after judgment, the Government asserted that the request was untimely, and the court's March 30, 1997 award was sufficiently generous and adequate to cover additional fees and expenses accumulated between September 26, 1996 and May 30, 1997. Further, the Government argued that the Ivys were not entitled to receive fees and expenses for post-judgment work, particularly work related to the decision not to take an appeal. The Ivys responded to the Government's arguments, and in addition asserted that the

5

Government's memorandum in opposition was untimely and therefore should not be considered by the district court.

After a telephone conference with counsel for the parties, the court issued its decision. Eleven Vehicles V, 36 F. Supp. 2d 237 (E.D. Pa. 1999). The court first held that the Ivys' supplemental fee application was not a Rule 59(a) motion, but instead arose under the EAJA. Id. at 238 n.1. It then addressed the merits of the application, considering the supplemental application as a whole along with the first application and fee award. Id. at 239. The court stated that it took into account all of the factors it had considered in determining the first fee award. In addition, the district court considered that "the supplemental request involves work performed on motions for reconsideration of doubtful validity filed by both parties," and that "the 190 hours spent by counsel appears `excessive, redundant and otherwise unnecessary.' " Id. (citation omitted). Based on these factors, the court awarded the Ivys an additional $5,000 in fees and $560.00 in expenses. The district court's opinion did not address the Ivys' argument that the Government's opposition to their request was untimely and should not be considered.

II.

On appeal, the Ivys make several substantive arguments in support of their assertion that the district court erred in awarding them less attorney fees than they requested. In addition, they contend that the court abused its discretion by entertaining the Government's late-filed memorandum opposing their supplemental request for attorney fees and expenses. The Government argues that the supplemental fee application is, in essence, a motion to alter or amend the district court's May 30, 1997 original fee award under Federal Rule of Civil Procedure 59(e).4  Accordingly, the

_____

4. In the district court, the Government argued in its opposition to the Ivys' supplemental fee application that the application was effectively a motion to amend the court's findings of fact under Fed. R. Civ. P. 59(a), not 59(e). However, in the instant case, there is little practical effect to

6

Government contends that the Ivys were obliged to comply with that Rule's requirement that such motions befiled "no later than 10 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Because the Ivys' supplemental fee request was filed approximately three months after entry of the May 30, 1997 award of attorney fees, the Government asserts that the request was untimely, and thus the court lacked subject matter jurisdiction. The district court rejected this argument, Eleven Vehicles V, 36 F. Supp. 2d at 238 n.1, and the Government did not appeal this issue.

It appears well settled that a motion for supplemental attorney fees is not a Rule 59(e) motion. In White v. New Hampshire Dep't of Employment Security, 455 U.S. 445, 447-48 (1982) the Court addressed a situation in which the petitioner requested attorney fees under the Civil Rights Attorney's Fees Awards Act, 28 U.S.C. S 1988, four-and-a-half months after winning judgment on the merits. The respondent argued that the motion was governed by the 10-day time limit of Fed. R. Civ. P. 59(e), and was therefore untimely. The Supreme Court held that Rule 59(e) was reserved "only to support reconsideration of matters properly encompassed in a decision on the merits." Id. at 451. The Court concluded that "a request for attorneys fees . . . raises legal issues collateral to the main cause of action -- issues to which Rule 59(e) was never intended to apply." Id. It held that attorney fees are not "compensation" for the injury suffered and are not an "element of `relief ' ":

> [A] motion for attorney fees is unlike a motion to alter or amend a judgment. It does not imply a change in the judgment, but merely seeks what is due because of the judgment. It is, therefore, not governed by the provisions of Rule 59(e).

Id. at 452-53 (quoting Knighton v. Watkins, 616 F.2d 795,

_____

this discrepancy. Moreover, the court explicitly relied on Brown v. Local 58, Int'l Bhd. of Elec. Workers, AFL-CIO, 76 F.3d 762 (6th Cir. 1996), which considered the same argument under Rule 59(e). The court here stated that it saw no difference between relying on subdivision (a) or subdivision (e) of Rule 59. Thus, for purposes of our review, this discrepancy is immaterial.

7

797 (5th Cir. 1980)). Numerous other decisions of the Supreme Court, this court, and other circuit courts have made the same observation. See Federal Communications Comm'n v. League of Women Voters of Cal., 468 U.S. 364, 373 n.10 (1984) ("a postjudgment request for attorney fees is not considered a motion to amend or alter the judgment under Rule 59(e)").5

The Government asserts that Rule 59(e) nevertheless applies in this case because the "judgment" the Ivys sought to "alter or amend" with their supplemental fee application was the initial May 30, 1997 award of attorney fees. However, under White, this May 30 award was not a "judgment" at all. See also Cartledge v. Heckler, 615 F. Supp. 545, 546 (N.D. Ill. 1985) ("[U]nder 28 U.S.C. S 2412(d)(1)(A), as under other fee-shifting statutes, the fee award is really in addition to and not part of the judgment."); Watkins v. Harris, 566 F. Supp. 493, 495 (E.D. Pa. 1983) ("[t]he EAJA is a fee shifting statute and if attorneys' fees are awarded, they are in addition to the amount of the judgment"); cf. Schultz v. Crowley, 802 F.2d 498, 500-05 (D.C. Cir.) (suit is final and not"pending" under the EAJA when merits have been decided even though post-judgment motion for attorney fees remains unresolved), reh'g denied, 806 F.2d 281 (D.C. Cir. 1986), cert. denied, 484 U.S. 869 (1987). The underlying "judgment" in this case was the district court's dismissal of the forfeiture proceedings. Because Rule 59(e) only applies to motions to alter or amend a judgment, it is inapplicable here.

Moreover, even if an initial award of attorney fees is a "judgment," a supplemental request for fees and expenses incurred during a period of time different from and subsequent to the time period covered by an initial fee award cannot be a motion under Rule 59(e) because the supplemental request does not seek to alter or amend the

_____

5. Other cases in accord are: Utah Women's Clinic, Inc. v. Leavitt, 75 F.3d
564, 567 (10th Cir. 1995), cert. denied, 518 U.S. 1019 (1996); Samuels v. American Motor Sales Corp., 969 F.2d 573, 577-78 (7th Cir. 1992); Schake, 960 F.2d at 1192; Cruz v. Hauck, 762 F.2d 1230, 1236-37 (5th Cir. 1985).

initial award. Rather, such a request seeks to address only fees and expenses not considered in the prior award determination. See Brown v. Local 58, Int'l Bhd. of Elec. Workers, AFL-CIO, 76 F.3d at 769-70.

Thus, the question remains under what authority could the district court consider the Ivys' supplemental request for attorney fees and expenses.6 The Ivys appear to contend that their supplemental request was a valid motion under the EAJA. However, the Ivys misconstrue the timing requirements of the EAJA. The EAJA requires that a party seeking an award of fees and other expenses shall submit its application to the court within thirty days of final judgment in the action. 28 U.S.C. S 2412(d)(1)(B). The underlying "action" here is the Government's forfeiture proceeding against the Ivys' property. The "final judgment" contemplated by the statute, it seems clear, is the judgment dismissing that forfeiture proceeding. It is not, as the Ivys argue, the May 30, 1997 adverse ruling on the parties' motions to reconsider ancillary matters. That ruling involved only post-judgment residual proceedings dealing with fees, costs, and expenses.7

There currently is no dispute that the Ivys satisfied the EAJA's requirements for their initial claim to attorney fees and expenses incurred in the underlying litigation. They filed their claim within thirty days after thefinal dismissal of the forfeiture case became unappealable. The district

_____

6. The only other case to address the precise question at issue here was Brown v. Local 58, Int'l Bhd. of Elec. Workers, AFL-CIO. See 76 F.3d at 769. Although the Court of Appeals for the Sixth Circuit in Brown rejected the appellants objections to the jurisdiction of the district court,
it did not explain on what basis the district court could consider an application for supplemental attorney fees.

7. The underlying forfeiture action was dismissed with prejudice and "final judgment" entered on March 26, 1996. (See Dist. Ct. Dkt. Entry # 146). The concurrence states that the district court's August 30, 1996 decision in Eleven Vehicles III was thefinal judgment in the underlying forfeiture action. However, the court's Eleven Vehicles III decision dealt only with post-judgment issues ancillary to the March 1996 dismissal of the forfeiture case. As discussed above, these issues had no effect on the finality of the March 26, 1996 judgment dismissing the underlying forfeiture action.

9

court, in a thoughtful and carefully written opinion, held in Eleven Vehicles III that the Ivys were a "prevailing party" in the forfeiture litigation, that the Government did not substantially justify its litigating position, and that there were no "special circumstances" that would make an award unjust. The Supreme Court has held that under the EAJA, once these findings are made a claimant need not relitigate these issues in later claims for attorney fees. See Commissioner, Immigration & Naturalization Serv. v. Jean, 496 U.S. 154, 158-62 (1990). Moreover, this court has held that once an EAJA fee request has been timely filed, "deficiencies in the contents of the claim may be corrected if the government cannot show any prejudice arising from the later correction of these deficiencies." See Dunn v. United States, 775 F.2d 99, 103-04 (3d Cir. 1985); see also Bazalo v. West, 150 F.3d 1380, 1383-84 (Fed. Cir. 1998) (adopting this circuit's reasoning in Dunn). The Dunn Court reasoned that Congress envisioned only one strict requirement in EAJA fee cases, namely that the court and the Government be put on notice that the claimant seeks fees under the EAJA. 775 F.2d at 104.

Thus, once the jurisdictional elements of an initial claim for attorney fees under the EAJA have been shown, the strictures of the EAJA do not dictate when a request for supplemental fees must be filed. In the absence of a timeliness requirement imposed by statutory command, a Federal Rule of Civil Procedure, or an applicable local court rule, "the only time limitation arises out of those equitable considerations that a district judge may weigh in his discretion." Hicks v. Southern Maryland Health Systems Agency, 805 F.2d 1165, 1166-67 (4th Cir. 1986); Cruz, 762 F.2d at 1236-38; see also Smith v. Bowen, 815 F.2d 1152, 1156 (7th Cir. 1987) (motion for attorney fees is governed by Fed. R. Civ. P. 54, which " `imposes no time limit apart from an implicit requirement of reasonableness' " (quoting Spray-Rite Serv. Corp. v. Monsanto Co., 684 F.2d 1226, 1248 (7th Cir. 1981), aff'd on other grounds, 465 U.S. 752 (1984) (citation omitted))). The Ivys waited approximately three months after the May 30, 1997 decision to request supplemental attorney fees. In addition, all of the supplemental fees and expenses applied for were incurred, and therefore known to the Ivys, prior to the district court's

10

May 30, 1997 decision. Accordingly, the Ivys could and should have supplemented their fee request prior to the court's decision in Eleven Vehicles IV. Based on such equitable considerations, had the district court refused to entertain the Ivys' supplemental request because of their three-month delay, it would have been within its discretion so to do. This is especially true given the Supreme Court's admonition in Hensley that a request for attorney fees should not result in a second major litigation. Hensley, 461 U.S. at 437.

Nevertheless, the district court in the exercise of its discretion chose to entertain this supplemental request. The Ivys' initial fee request clearly covered only fees and expenses incurred through September 26, 1996. All parties were aware at the time that request was filed that the Government's motion for reconsideration of the Ivys' right to a fee award, the Ivys' motion for reconsideration of the Government's right to a certificate of reasonable cause, and the Ivys' motion for a cost of living adjustment to the compensable attorney billing rate remained pending before the district court. The Government acknowledges that in the course of litigating its objections to the Ivys' first request for fees and expenses, the Ivys put the court and the Government on notice that they reserved the right to submit a statement of fees and expenses incurred after September 26, 1996. The Ivys appear to have delayed three months in requesting additional fees and expenses because they incorrectly believed that they were required to wait to apply until 30 days after the May 30, 1997 judgment became unappealable. Thus, we cannot say that the district court abused its discretion in considering the Ivys' supplemental request.8

Thus, we turn to the Ivys' challenges to the district court's legal analysis, and their argument that the court

_____

8. The Government's suggestion that it was prejudiced by the Ivys' delay in filing its supplemental request because it could not appeal the final fee award rings hollow. The Government was free to appeal the May 30, 1997 award if it chose so to do. The Government was also free to appeal the January 20, 1999 supplemental award if it chose to do so. It does not appear that the Government was in any way prejudiced by the Ivys' delay.

abused its discretion in failing to address their contention that the Government's memorandum in opposition to their supplemental fee request was untimely and should not have been considered.

III.

The Ivys assert that the district court erred in several ways in its analysis of their supplemental fee request. Their arguments essentially boil down to the following: (1) the court failed to justify or explain its findings that the claim submitted was "excessive, redundant, or otherwise unnecessary"; (2) the court sua sponte improperly granted attorney fees in an amount below that requested in the absence of a Government challenge to the requested amount; (3) the court disallowed hours worked and granted less than the amount submitted without making the findings required by EAJA S 2412(d)(1)(C); and (4) the court failed to inquire into the particulars of the supplemental fee request, instead relying on its "generalized sense" of what fee was reasonable for the entire case. Our review of such challenges to the legal standards applied by the district court is plenary. See Bell v. United Princeton Properties, Inc., 884 F.2d 713, 718 (3d Cir. 1989).

The district court awarded the Ivys less in attorney fees than requested for the supplemental proceedings at least in part because it found that "the 190 hours spent by counsel appears `excessive, redundant and otherwise unnecessary.' " Eleven Vehicles V, 36 F. Supp. 2d at 239 (quoting Becker v. ARCO Chem. Co., 15 F. Supp. 2d 621, 633 (E.D. Pa. 1998)). When this court reviews such a finding, it is presented with two issues: "first, whether the district court abused its discretion in concluding that the hours expended on a certain task were excessive; and second, whether the district court abused its discretion in concluding that a certain number of hours would be a reasonable number of hours to expend on that task." Rode v. Dellarciprete, 892 F.2d 1177, 1187 (3d Cir. 1990).

The court, in the instant case, may have been correct in its conclusions but regrettably did not explain how it reached them. The Supreme Court has instructed that it is

12

important "for the district court to provide a concise but clear explanation of its reasons for the fee award." Hensley, 461 U.S. at 437. We have held, in reviewing similar situations, that to resolve these issues "the district court must explain on the record the reasons for its decisions." Rode, 892 F.2d at 1187. Indeed, the lack of explanation makes it difficult for us to address with any competence the Ivys' remaining challenges to the district court's decision. We therefore are constrained to remand this case to the district court for an explanation of its reasons for the fee award. At the same time, we believe it is appropriate to provide the district court with some guidance bearing on the Ivys' other challenges.

A.

First, the Court stated in Commissioner, Immigration and Naturalization Service v. Jean that "fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." 496 U.S. at 163 n.10. In the instant case, the Ivys request fees for one unsuccessful claim -- their motion and ensuing activity for the district court to reconsider its grant of a certificate of reasonable cause to the Government. In essence, this motion litigated the issue of the Ivys' entitlement to costs for the underlying forfeiture claim. Nevertheless, there is no reason why the Court's admonition about unsuccessful "fees for fee litigation" does not apply equally to "fees for cost litigation." See Hathaway v. United States, No. 93-36158, 1995 WL 66783, at *1 (9th Cir. Feb. 16, 1995); Davis v. United States, 887 F. Supp. 1387, 1389 (D. Colo. 1995). Thus, the Ivys are not entitled to fees for litigating this motion.

B.

Second, the Ivys note that in this circuit, a court may not reduce counsel fees sua sponte as "excessive, redundant, or otherwise unnecessary" in the absence of a sufficiently specific objection to the amount of fees requested. In statutory fee cases, it is well settled in this circuit that in calculating the "lodestar," or initial fee calculation requiring

13

the court to multiply a reasonable hourly fee by the reasonable amount of hours worked, the district court may not award less in fees than requested unless the opposing party makes specific objections to the fee request. As this court stated in Cunningham v. City of McKeesport,

> when an opposing party has been afforded the opportunity to raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure, and declines to do so, no reason occurs to us for permitting the trial court to disregard uncontested affidavits filed by a fee applicant.

753 F.2d 262, 266 (3d Cir. 1985), vacated on other grounds, 478 U.S. 1015 (1986), and reinstated, 807 F.2d 49 (3d Cir. 1986); see also McDonald v. McCarthy, 966 F.2d 112, 118 (3d Cir. 1992); Bell, 884 F.2d at 719. A district court may not " `decrease a fee award based on factors not raised at all by an adverse party.' " Rode, 892 F.2d at 1183 (quoting Bell, 884 F.2d at 720).9 However, once the opposing party has made a sufficiently specific objection to the substance of a fee request, "the court has a great deal of discretion to adjust the fee award in light of these objections." Bell, 884 F.2d at 721. The rationale for this prohibition on sua sponte fee award reductions is twofold. First, sua sponte reduction deprives the applicant of the right "to offer evidence in support of the reasonableness of the request." Bell, 884 F.2d at 719. (internal quotation marks omitted). Second, "because statutory fee litigation is adversarial litigation, there is no need to allow the district court to reduce a fee award on its own initiative." Id.

Although cases establishing and applying this rule appear to do so in calculating the "lodestar," we believe that

_____

9. One exception to this rule is that the district court may make sua sponte reductions where it has personal knowledge of the costs involved in certain aspects of the litigation, for example where the court presided over a hearing or conference and knows exactly how much time and effort that proceeding involved. See Cunningham, 753 F.2d at 267. For example, this exception would appear applicable in the present case to fees for the November 9, 1998 telephone conference over which the district court presided.

14

the rule's rationale applies with equal force to post-judgment supplemental applications for "fees for fee litigation" as it does in calculating fees due for litigating the merits of the underlying claim. Only with proper notice can the claimant know which request to defend as reasonable. Moreover, as evidenced by this case, post-judgment fee litigation remains adversarial. This circuit's precedent therefore binds the district court not to reduce the fee amount requested sua sponte, in the absence of a Government objection. Nevertheless, this prohibition on sua sponte reduction of fees applies only to challenges to the excessiveness of a fee request. Here, the Government's objections to the Ivys' supplemental fee request are more appropriately described as legal challenges to certain types of attorney work that are simply never compensable under the EAJA.10 Thus, if the district court agrees that categories of work for which the Ivys request fees are not compensable under the EAJA, it should prune the fees requested for this work from its fee award. Although the court could have taken this approach, it does not appear to have made any

_____

10. The Government's statement challenging categories of work for which the Ivys requested fees, found in its memorandum in opposition to the Ivys' supplemental request for attorney fees and expenses, was as follows:

> The Ivys seek to be compensated for limited negotiations in which they rejected the Government's offer and then rejected the Government's offer to negotiate a settlement and for research and other post-judgment work. The Ivys even seek to be paid for giving the Government claimants' and counsel's social security numbers, required by the Treasury Department to write a check and even the time it took to answer Treasury Department's confirming phone call to counsel. (Exhibit 1, 7/22/97; 7/24/97, 7/30/97).

> Post judgment time spent bringing unsuccessful appeals is not compensable; it makes even less sense to award fees for the decision not to take such an appeal. [Griffin v. Strong, 827 F. Supp. 683, 687 (D. Utah 1993)]. Further, time devoted to clerical activities and background research is normally included in overhead and not billable to clients. The Government should not be held to pay such expenses. Id.

The Government placed the above-quoted passage under the heading: "No Award for Post-Judgment Work Absent Appeal."

15

of the legal conclusions invited by the Government's challenges. On the contrary, it stated that the fees requested were "excessive, redundant and otherwise unnecessary." Therefore, on remand, the court must clarify its reasons for the supplemental reward it made in response to the fees requested by the Ivys.

C.

Third, the Ivys argue that the court erred in disallowing the hours worked and granting less than the requested fee without making the findings required by 28 U.S.C. S 2412(d)(1)(C), a provision of the EAJA. It provides:

> The court, in its discretion, may reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy.

28 U.S.C. S 2412(d)(1)(C). The Ivys claim that the rule required the court, in the exercise of its discretion, to make a finding of "dilatory conduct." Arguably, however, the court made just such a finding when it stated "the supplemental request involves work performed on motions for reconsideration of doubtful validity filed by both parties." Eleven Vehicles V, 36 F. Supp. 2d at 239.

Nevertheless, it is not clear from the district court's opinion that it invoked its discretion under this provision. The opinion makes no reference to S 2412(d)(1)(C), and the court did not attempt any further explanation of its conclusion that the motions for reconsideration were"of doubtful validity." The district court, therefore, should provide on remand an adequate explanation.

D.

Finally, the Ivys claim that the court erred in failing to look at the particulars of the supplemental request, in isolation from the prior fee award. The court noted that in analyzing the Ivys' supplemental fee request, "rather than inquiring into the particulars of the second itemized

16

statement, as a separate and distinct event, unlinked to the factors that informed the Court's rulings in thefirst itemized statement, the Court will consider what overall award of fees and expenses for all work counsel has performed in this case, will yield a reasonable fee." Eleven Vehicles V, 356 F. Supp. 2d at 239. The court considered this approach to be consistent with the Supreme Court's direction that the EAJA "favors treating the case as an inclusive whole rather than as atomized line-items." Id. (quoting Jean, 496 U.S. at 161-62). The district court followed the Supreme Court's direction.

What the district court appears to have had in mind was the need to impose some degree of proportionality between the fees for the underlying merits litigation and fees for fee litigation. At least one other court of appeals has found this to be an important consideration. See Coulter v. Tennessee, 805 F.2d 146, 151 (6th Cir. 1986) (holding that district court did not err in limiting number of compensable attorney hours spent litigating fees to 3-5% of hours spent litigating merits), cert. denied, 482 U.S. 914 (1987). At least one district court in this circuit concurs. See Jackson v. Philadelphia Housing Auth., 858 F. Supp. 464, 477 (E.D. Pa. 1994). A trial court should be free to view a case in this pragmatic manner, subject to the guidelines we have articulated here. We see no error in the district court's global perspective of the Ivys' claims for attorney fees.

IV.

The Ivys also assert that the court abused its discretion when it neglected to consider their argument that the Government's memorandum in opposition to their supplemental request for fees and expenses was untimely and should not have received any consideration. The Ivys served their supplemental request on the Government by sending it via overnight courier on Tuesday, August 26, 1997 for delivery on Wednesday, August 27, 1997. Local Rule 7.1 required that the Government's opposition to this motion be served on the Ivys within 14 days after service of the Ivys' supplemental request. E.D. Pa. R. 7.1(c). This local rule also provides that "[i]n the absence of a timely

17

response, the motion may be granted as uncontested . . . ." Id. (emphasis added).

Under Rule 6(a) of the Federal Rules of Civil Procedure, the 14-day deadline for serving an opposition to the motion expired either on Wednesday, September 10, 1997, as the Ivys contend, or on Friday, September 12, 1997 if overnight courier delivery is considered service by mail under the Federal Rules, as the Government contends. As the Ivys observe, however, it does not matter which of these two dates was the true deadline. The memorandum in opposition was served on Monday, September 15, 1997, as the Government now concedes. Regardless of whether overnight courier service qualifies as service by mail, the Government's opposition was not timely filed. 11 Nevertheless, the district court appears to have considered the arguments made therein.

Local court rules play a significant role in the district courts' efforts to manage themselves and their dockets. Smith v. Oelenschlager, 845 F.2d 1182, 1184 (3d Cir. 1988). Accordingly, we have held that it is not an abuse of discretion for a district court to impose a harsh result, such as dismissing a motion or an appeal, when a litigant fails to strictly comply with the terms of a local rule. Id. at 1184-85. However, this court has not written on a district court's discretion to depart from its own local rule, whether that rule is phrased in discretionary or mandatory terms.

In Smith v. Oelenschlager, for example, the district court dismissed the plaintiff 's motion for a new trial because the plaintiff failed to strictly comply with a local rule requiring him to order a trial transcript from the court reporter. Id. at 1182-83. Instead, the plaintiff had sent a letter to the district judge and the magistrate to whom the case had been assigned requesting that one of them forward his request to the court reporter. Id. We affirmed the district court's dismissal of the motion, and found it unnecessary to reach the issue of whether a district court had discretion

_____

11. We need not decide whether service by overnight courier satisfies the requirements for obtaining three additional "mail" days under Rule 6(e). See Magnuson v. Video Yesteryear, 85 F.3d 1424, 1430 (9th Cir. 1996) (describing debate among federal courts and collecting cases).

to entertain a new trial motion even though the plaintiff had failed to comply with the terms of the local rule. See id. at 1184. However, Judge Mansmann, in dissent, strenuously argued that district courts have inherent discretion to depart from their own local rules where justice so requires, and they have the responsibility to exercise that discretion. See id. at 1185-86 (Mansmann, J., dissenting).

Although the language of Local Rule 7.1(c) is phrased in mandatory terms requiring a party opposing a motion to file a response and opposing brief within fourteen days after service of the motion, the subsequent language of the rule does not mandate the grant of the motion in the absence of a timely motion and brief. The court, under the rule, "may," but is not mandated, to grant the motion as uncontested. Other courts of appeal that have addressed the authority of a district court to depart from its local rule have uniformly determined that district courts possess inherent discretion to depart. See Somlyo v. J. Lu-Rob Enter., Inc., 932 F.2d 1043, 1048 (2d Cir. 1991); United States v. Diaz-Villafane, 874 F.2d 43, 45-46 (1st Cir.) (noting and applying "widely-accepted idea that a district court should be accorded considerable latitude in applying local procedural rules of its own making, and in departing from them."), cert. denied, 493 U.S. 862 (1989); Braxton v. Bi-State Dev. Agency, 728 F.2d 1105, 1107 (8th Cr. 1984) ("It is for the district court to determine what departures from its rules may be overlooked.").12 Some of these courts have permitted district courts to depart from local rules even when the local rule is phrased in mandatory language. In Somlyo, Chief Judge Oakes of the Second Circuit, in the face of a mandatory local rule, held: "The district court's inherent discretion to

_____

12. Other cases supporting the power of a court to depart from its own rule are: Allen v. United States Fidelity & Guar. Co., 342 F.2d 951, 954 (9th Cir. 1965) ("It is for the court in which a case is pending to determine, except as it is bound by precedents set by higher authority in its own judicial hierarchy, what departures from statutory prescription or rules of court are so slight and unimportant that the sensible treatment is to overlook them."); Slanina v. William Penn Parking Corp., Inc., 106 F.R.D. 419, 422 (W.D. Pa. 1984) ("noncompliance with the local rules may be excused by the court in its discretion").

19

depart from the letter of the Local Rules extends to every Local Rule regardless of whether a particular Local Rule specifically grants the judge the power to deviate from the Rule." 932 F.2d at 1048. See also Braxton, 728 F.2d at 1107.

Several of these courts have made clear, however, that this discretion is not unfettered. For example, the Second Circuit in Somlyo stated that the district court "should ask whether the application of the letter of Local Rules to a particular case would cause an unjust result." 932 F.2d at 1049. The First Circuit in Diaz-Villafane stated that to depart from its rules, a court "(1) must have a sound reason for doing so, and (2) must ensure that no party's substantial rights are unfairly jeopardized." 874 F.2d at 46.

We believe these courts are generally correct in their approach permitting a district court to waive a requirement of its local rules in appropriate circumstances. We therefore hold that a district court can depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment.

In the instant case, the court failed to address the Ivys' argument that the Government's response was untimely filed. Thus, we are unable to determine whether the court abused its discretion. Therefore, on remand the district court should explain its apparent decision to waive the 14-day service requirement of Local Rule 7.1(c).

V.

Accordingly, the order of the district court will be vacated, and the case remanded for findings and explanatory statements consistent with this opinion. Each side to bear its own costs on this appeal.

20

ALITO, Circuit Judge, concurring:

I concur in the Court's judgment, but I write separately to explain my understanding of certain threshold jurisdictional questions and of the District Court's task on remand.

I.

I cannot agree with the majority's implicit conclusion that the issue of whether a Rule 59(e) motion is timelyfiled must be noticed sua sponte by this Court. The District Court rejected the government's Rule 59 argument and the government did not appeal this issue. Therefore, unless the question of timely filing implicated the District Court's subject matter jurisdiction, it is not properly before this Court. I believe that Rule 59 is merely a procedural bar, akin to a statute of limitations, that curtails a District Court's authority to permit an untimely motion to amend but does not deprive it of subject matter jurisdiction. Accordingly, I think that we need not reach the merits of this question.

Rule 59(e) provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment." Fed. R. Civ. P. 59(e). Rule 6 further provides that a district court "may not extend the time for taking any action" under Rule 59(e). Fed. R. Civ. P. 6(d). In this sense, the time limit imposed by the rule is"mandatory and jurisdictional." De la Fuente v. Central Elec. Coop., Inc., 703 F.2d 63, 64 n.1 (3d Cir. 1983) (quoting White v. New Hampshire Dep't of Employment Sec., 629 F.2d 697, 699–700 (1st Cir. 1980)).

Simply because the District Court has no power to extend the Rule 59 filing period, however, does not mean that the rule implicates subject matter jurisdiction. 1 By its terms,

_____

1. Although this Court has occasionally referred to Rule 59 as "jurisdictional," none of these cases discussed whether the rule implicates subject matter jurisdiction. See, e.g., Schake v. Colt Indus. Operating Corp. Severance Plan for Salaried Employees, 960 F.2d 1187, 1192 (3d Cir. 1992); Kraus v. Consolidated Rail Corp., 899 F.2d 1360, 1362 (3d Cir. 1990). I believe that these opinions used the language of "jurisdiction" only to emphasize the mandatory nature of the 10-day time limit, not to imply some connection with Article III subject matter jurisdiction.

21

Rule 59 does not govern subject matter, but rather sets a mandatory procedural limitation on the District Court's discretion to entertain a motion to amend. Cf. Curacao Drydock v. M/V Akritas, 710 F.2d 204, 206 (5th Cir. 1983) (construing Fed. R. Civ. P. 4(a), governing timely notice of appeals, as procedural but not implicating subject matter jurisdiction). Viewing Rule 59 as a merely procedural bar accords with Rule 82's mandate that "[t]hese rules shall not be construed to extend or limit the jurisdiction of the United States District Courts." Fed. R. Civ. P. 82. See also 14 Moore's Federal Practice S 82.02 (1999) ("For the purpose of [Rule 82], jurisdiction means subject matter jurisdiction") (emphasis in original); Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 370 (1978) ("It is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction."). Judge Flaum, writing for six judges in an evenly-split Seventh Circuit decision, elucidated this point:

> Subject matter jurisdiction is not . . . necessarily the appropriate approach to the 10-day timeline of [Rule 59]. Subject matter jurisdiction is controlled by a statute explicitly labeled as such. Neither Rule 59 not Rule 6 are styled jurisdictional. Moreover, subject matter jurisdiction is informed by concerns for federalism. No such concern is present here. . . . Had Congress intended the 10-day time period to be interpreted like subject matter jurisdiction, it would have said so; yet it was silent.

Varhol v. National R.R. Passenger Corp., 909 F.2d 1557, 1569 (7th Cir. 1990) (en banc) (Flaum, J., concurring).

Finally, I would note that both the Supreme Court and this Court have recognized an equitable exception to Rule 59. This "unique circumstances" exception, first announced in Thompson v. INS, 375 U.S. 384 (1964) (per curiam), permits a litigant who relies on an extension improperly issued by the District Court to perfect his appellate rights by filing a Rule 59 motion within the period extended by the court's order. See Kraus, 899 F.2d at 1362. Although this narrow exception does not apply to the present case, the mere fact that there is an equitable exception shows that Rule 59's strictures do not implicate Article III subject

22

matter jurisdiction: "[e]quitable tolling or estoppel simply is not available when there are jurisdictional limitations." Shendock v. Director, Office of Workers' Compensation Programs, 893 F.2d 1458, 1466 (3d Cir. 1990) (en banc).

If, as I conclude, Rule 59 does not implicate subject matter jurisdiction, then this Court is not required to notice the issue of untimely filing on its own initiative. While I have no substantive disagreement with the Court's conclusion that Rule 59(e) does not apply to supplemental fee requests, I believe that we need not reach this issue because the government failed to preserve it for appeal.

II.

I agree with the Court that the District Court had jurisdiction under the Equal Access to Justice Act (EAJA) to consider the Ivys' supplemental request for attorney fees and expenses. I would, however, employ a somewhat different analysis in reaching this conclusion.

The EAJA requires that a party seeking a fee award submit its application to the court "within thirty days of final judgment in the action." 28 U.S.C. S 2412(d)(1)(B). The majority holds that "the underlying `action' here is the Government's forfeiture proceeding . . . . The `final judgment' contemplated by the statute . . . is the[March 26, 1996] judgment dismissing that forfeiture proceeding." Maj. Op. at 9. The majority then dismisses the District Court's August 30, 1996 ruling awarding, inter alia, a certificate of reasonable cause to the government as "ancillary" and "involv[ing] only post-judgment residual proceedings." Maj. Op. at 9.

I disagree. In my view, the order granting a certificate of reasonable cause was an " `integral part' of the final judgment on the merits even though not entered concurrently with that judgment." United States v. One 1986 Ford Pickup, 56 F.3d 1181, 1185 (9th Cir. 1995) (per curiam). The Supreme Court has emphasized that the finality requirement should be given "a practical rather than a technical construction." Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 375 (1981) (citation omitted). Under this functional standard, "a `final decision' generally

23

is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233 (1945). As the Ford Pickup court noted, the decision whether to grant a certificate of reasonable cause is functionally part of the merits judgment: a certificate may be granted only by the judge presiding over the forfeiture action; it is binding on the parties and bars any future action for damages; and it must be issued soon after the entry of judgment, before costs are taxed. See 56 F.3d at 1185. Most importantly, the decision of whether or not to grant the certificate involves questions of fact and law that are intimately tied to the merits of the underlying forfeiture action.2 On this basis, I believe that the relevant "judgment" in this case -- the one "which end[ed] the litigation on the merits," Catlin, 324 U.S. at 233 -- was the August 30, 1996 order granting the certificate of reasonable cause.

Under the EAJA, a "final judgment" is "a judgment that is final and not appealable." 28 U.S.C. S 2412(d)(2)(G). The 30-day period for filing an EAJA attorneys fee claim does not begin to run "until the time for filing a notice of appeal [has] expired." Baker v. Sullivan, 956 F.2d 234, 235 (11th Cir. 1992) (per curiam). Because the parties filed Rule 59(e) motions for reconsideration of the District Court's August 30 judgment, the time for appeal did not begin to run until "the entry of the order disposing of the last such motion outstanding." Fed. R. App. P. 4(a)(4)(C).

Thus, the appellate door in this case did not close until 60 days after the May 30, 1997, adverse ruling on the motions for reconsideration. See Fed. R. App. P. 4(a)(1) (setting 60-day limit for appeal in cases where United States is a party). The Ivys' motion for supplemental fees was filed within 30 days of the end of the appeals period,

_____

2. The litigation over the certificate of reasonable cause cannot be dismissed as mere "cost litigation." Although the grant of the certificate did preclude Ivy from recovering costs for the forfeiture claim, it also addressed substantive issues of liability that would be highly relevant if Ivy chose to file a S 1983 claim against the seizing officers or prosecutors
in the case. See 28 U.S.C. S 2465 (if certificate is issued, neither the person who made the seizure nor the prosecutor shall"be liable to suit or judgment on account of such suit or prosecution").

24

placing it well within the EAJA's statutory window of opportunity. Because I believe that the supplemental motion was filed within the statute's 30-day time limit, I see no need to consider whether the District Court could, in its discretion, entertain a later-filed supplemental fee request.

III.

Finally, I am in general agreement with part III of the opinion of the Court.3 I write separately, however, to express my view that the "proportionality review" alluded to in part IIID is necessarily limited in scope. Once an adverse party has made a sufficiently specific challenge to a particular expense area, a District Court should certainly look back to previous awards in the same area in determining the reasonableness of the requested supplemental fee. In this sense, every supplemental fee request entails a "global" review of the entire fee award.

I do not, however, read the opinion of the Court to authorize a District Court to conduct a plenary review of an entire EAJA fee award for "proportionality" based on a general allegation of unreasonableness by the objecting party. Such a reading would vitiate the well-established principle that a District Court cannot sua sponte order a reduction of what it perceives to be an excessive fee. See, e.g., McDonald v. McCarthy, 966 F.2d 112, 118-19 (3d Cir. 1992); Rode v. Dellarciprete, 892 F.2d 1177, 1182 (3d Cir. 1990); Bell v. United Princeton Properties, Inc., 884 F.2d 713, 720 (3d Cir. 1989). Permitting such free-ranging discretion would unwisely abandon "the carefully crafted set of rules for the exercise of district court discretion in fee

_____

3. For the reasons stated above, I do not agree with the majority's conclusion in part III(A) that the motion to reconsider the grant of a certificate of reasonable cause merely "litigated the issue of the Ivy's entitlement to costs for the underlying forfeiture claim." Maj. Op. at 13. I agree, however, with the majority's general point that the District Court may decline to award fees for unsuccessful litigation on particular issues, see, e.g., Hensley v. Eckerhart, 461 U.S. 424 (1983), especially when, as the District Court found here, the party was merely "rehashing" previous arguments "of doubtful validity." United States v. Eleven Vehicles, 36 F. Supp. 2d 237, 239 (E.D. Pa. 1999).

25

shifting cases" for "some standardless rule of district court gestalt." Cunningham v. City of McKeesport, 753 F.2d 262, 267 (3d Cir. 1985).

On remand, the District Court should be free to consider (and explain in its opinion) whether properly-challenged fee categories were "excessive" in light of both the initial and the supplemental fee requests. However, the government's bare allegation "in general terms that the time spent was excessive" is not, in my view, enough to empower the District Court to conduct a generalized proportionality review of the entire fee award. See Bell, 884 F.2d at 720.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit