OPINION
In 1997, Miami Valley Hospital (MVH) filed a collection action against Frank and Sandra Payson for $1,528.09 in services rendered to the Paysons on various dates between May, 1992, and June, 1995. The original complaint was filed in Dayton Municipal Court, but was transferred to the Common Pleas Court after the Paysons filed a counterclaim against MVH for amounts in excess of $25,000 on each of several claims, and $5,000,000 in punitive damages. While the case was still pending in municipal court, the Paysons were given leave to file third-party complaints against Guardian Life Insurance Company of America (Guardian) and Community Mutual Insurance Company dba Anthem Blue Cross and Blue Shield (Anthem).
On March 28, 1998, the Paysons filed a third-party complaint against Guardian and Anthem in the municipal court. The first claim in the third-party complaint alleged that Miami Valley had sued the Paysons for failure to pay for health care services and that the insurers were required to indemnify the Paysons. The second claim in the third-party complaint made the same allegations, but asked for contribution and reimbursement. On April 28, 1998, the law firm of Porter, Wright, Morris Arthur appeared on Guardian's behalf and received an extension of time until May 29, 1998, to plead or otherwise defend. The Paysons have been represented at all times by Defendant, Frank Payson, who has practiced law since 1992.
After the case was transferred to Common Pleas Court, Guardian received another extension, to July 14, 1998. On that date, Guardian then filed a motion to dismiss, or, in the alternative, for summary judgment. Guardian's motion also asked for attorney fees.
According to the affidavits and documents attached to the motion, Guardian's senior counsel, Peter Lenhart, had sent the Paysons a letter on June 8, 1998, indicating that Guardian provided COBRA coverage for the Paysons for October 1, 1993, through March 31, 1994. Only one charge listed in MVH's complaint was incurred during Guardian's coverage period, i.e., a $619 charge for services rendered on October 5, 1993. At the time, the Paysons' deductible was $200. Accordingly, Guardian paid MVH $344.72 (after subtracting the $200 deductible, plus a preferred provider discount of $74.28). Miami Valley had also deducted the preferred provider discount from the amount it tried to collect from the Paysons. Specifically, the amount Miami Valley sought was only the amount of the Paysons' deductible, i.e., $200. Lenhart pointed out that Guardian was not liable for that amount.
Lenhart attached documentation supporting the statements in his letter, and asked the Paysons to let him know of any inaccuracies. However, the Paysons never contacted Lenhart. Lenhart indicated in the affidavit that he had called Mr. Payson's office two or three times about the lawsuit, but had received no response. Guardian's trial counsel, Linda Holmes of Porter, Wright, Morris Arthur, also noted in the motion that she had written Mr. Payson to try to resolve the matter without Guardian incurring additional fees. Her letter of June 19, 1998, was attached to the motion, and set out the same facts that were outlined in Lenhart's June 8 letter. Both Lenhart and Holmes told Payson that if Guardian had to file an answer and defend the action, Guardian would seek attorney fees under the Employee Retirement Income Security Act of 1974 (ERISA), Section 1132(g)(1), Title 29, U.S. Code.
The Paysons never responded to Holmes' letter, nor did they ever file a response to Guardian's motion. Instead, they asked for an extension of time until December 3, 1998, claiming they needed to conduct discovery. However, no discovery requests were ever sent to Guardian.
The trial court gave the Paysons until September 30, 1998, to file a response to Guardian's motion. On September 18, 1998, the Paysons requested another extension, due to the illness of Mrs. Payson's father. The court granted a further extension to October 30, 1998. Subsequently, the Paysons received a third extension of time, until November 13, 1998, due to the death of Mrs. Payson's father.
On November 4, 1998, the Paysons dismissed the claims against Guardian, without prejudice, pursuant to Civ.R. 41(A)(1). Up to that point, Guardian had been required to participate fully in the litigation, including filing pleadings and memoranda, and attending two mediation sessions in August, 1998. Based on Guardian's pending request for fees, the court referred the case to a magistrate for a decision on attorney fees, if any, to which Guardian might be entitled.
After the Paysons objected to the referral, based on lack of jurisdiction, the court ordered the magistrate to make findings of fact and conclusions of law about the effect of the Civ.R. 41(A)(1) dismissal. The magistrate subsequently filed a decision and entry overruling the Paysons' motion to dismiss for lack of jurisdiction, and the trial court adopted the decision. A stay was then granted while the Paysons filed a petition for writ of prohibition in our court. However, we rejected the petition because it failed to state a claim. See Miami Valley Hosp. v. Payson (Dec. 13, 1999), Montgomery App. No. CA 17830, unreported, 1999 WL 1207064, p. 4.
After the petition was rejected, the magistrate held a hearing on attorney fees. At that time, Guardian presented evidence about the fees, including expert testimony on their necessity and reasonableness. Mr. Payson also testified at the hearing. According to the testimony, Guardian had incurred more than $17,600 in fees and costs. The magistrate made certain deductions and recommended a fee award of $8,638.88 to Guardian. After the Paysons filed objections, the trial court adopted the magistrate's decision, with a few minor changes. The Paysons then appealed, raising the following single assignment of error:
 I. The trial court erred and/or abused its discretion to the prejudice of Appellants in awarding sanctions to Appellee.
Upon reviewing the record and applicable law, we find the assignment of error without merit. Consequently, the judgment of the trial court will be affirmed.
 I
To begin, we note that the Paysons have presented a single assignment of error, but have included six separate issues in their discussion. As a result, we will consider each issue to the extent necessary to explain our decision. We will also refer to various facts revealed at the hearing on attorney fees.
In their first issue, the Paysons contend that the trial court erred by deciding that a party does not have to "prevail" to recover attorney fees under Section 1132(g)(1), Title 29, U.S. Code. In this regard, the magistrate found that Section 1132(g)(1) does not require a party to prevail before fees can be awarded. However, the magistrate also found that even if "prevailing party" status were required, Guardian had, in fact, prevailed.
After reviewing the case, the trial court disagreed that Guardian had formally prevailed. On the other hand, the trial court did agree that prevailing party status is not required to recover attorney fees. As a result, the trial court affirmed the fee award. Therefore, the issue before us is whether a party must be a "prevailing party" to be awarded fees under Section 1132(g)(1). To our knowledge, this is an issue of first impression in Ohio.
At the outset, we note that the Paysons contended in the trial court that the court lost jurisdiction to consider attorney fees after the Civ.R. 41(A)(1) dismissal. However, the Paysons have not raised this issue on appeal. Instead, they focus on the applicable federal law and whether an award of fees was proper under federal standards.
Before addressing the fee award, we will briefly consider subject matter jurisdiction, since that is an issue we may raise on our own motion. Our first observation in this regard is that the Civ.R. 41(A)(1) dismissal did not cause the trial court to lose jurisdiction. We have previously held that voluntary dismissals do not deprive trial courts of jurisdiction to rule on motions for sanctions. State ex rel. J. Richard Gaier Co., L.P.A. v. Kessler (1994), 97 Ohio App.3d 782, 783. In Gaier, we stressed that a request for sanctions under Civ.R. 11 is not part of the matter dismissed, but is a demand for collateral relief. Id. at 784. In this regard, we noted that:
 allowing a trial court to consider a collateral request for sanctions for the filing of a frivolous complaint is vastly different from allowing a trial court to consider such a motion relative to the actual voluntary dismissal. Where the former merely allows a trial court to enforce the rule that parties ought not file frivolous pleadings, the latter would unreasonably penalize a plaintiff for exercising the absolute right of dismissal. Cf. Sturm v. Sturm (1992), 63 Ohio St.3d 671 * * *. We hold, therefore * * * that the filing of a voluntary dismissal does not divest the trial court of jurisdiction over a motion for sanctions so long as that motion does not seek to penalize a party for exercising his absolute right to dismiss an action. Absent such a result, a party could force a defendant to expend significant time and money to defend against an arguably frivolous action and then dismiss that action just prior to trial with little if any consequence. In that circumstance, the goal of Civ.R. 11 and its statutory counterpart, R.C. 2323.51, which is to prevent parties from using the judicial process to harass one another, would be significantly less achievable.
Id. at 785 (citation omitted). See also, e.g., Curtis v. Curtis (2000),140 Ohio App.3d 812, 814, and Lewis v. Celina Fin. Corp. (1995),101 Ohio App.3d 464, 470.
We believe the same reasoning extends to a motion for sanctions filed under Section 1132(g)(1), particularly where, as here, the motion was filed before the voluntary dismissal. Clearly, Guardian was not seeking to penalize the Paysons for filing a voluntary dismissal. Accordingly, the trial court had jurisdiction to consider the motion for sanctions. Accord, Payson, supra, 1999 WL 1207064, at p. 4.
A further potential jurisdictional issue is the effect of preemption under ERISA. Generally, ERISA has broad preemptive effect. Richland Hosp., Inc. v. Ralyon (1987), 33 Ohio St.3d 87, 91. However, the Ohio Supreme Court has held that state and federal courts have concurrent jurisdiction "to award benefits due under the terms of a self-insured employee plan adopted" under ERISA. State and federal courts also have concurrent jurisdiction to award "reasonable attorney fees and costs to either party." Id. at paragraphs one and two of the syllabus.
The Paysons have not contested the trial court's finding that ERISA applies to the Guardian health insurance plan. Therefore, since the plan was subject to ERISA, the trial court had jurisdiction to award reasonable attorney fees. We also have jurisdiction to review the award.
Having resolved the jurisdictional issues, we now turn to the fee award itself. In the first issue for review, the Paysons cite various federal cases to support their position that federal courts require prevailing party status as a condition precedent to attorney fee awards under Section 1132(g)(1). Among the authorities cited are Sixth Circuit cases, including Othen v. Ann Arbor School Bd. (C.A.6 1983), 699 F.2d 309, and Brown v. Local 58, Internatl. Bhd. of Electrical Workers, AFL-CIO (C.A. 1996), 76 F.3d 762, as well as the Fourth Circuit decision in Martin v. Blue Cross Blue Shield of Va., Inc. (C.A. 4 1997), 115 F.3d 1201.
The concept of "prevailing party" is important because a voluntary dismissal without prejudice in Ohio means that there has been no adjudication on the merits. Sturm v. Sturm (1992), 63 Ohio St.3d 671,675. Further, without an adjudication on the merits, no formal "prevailing party" exists. Id. Consequently, Guardian's ability to recover attorney fees depends on whether the statute authorizing fees requires an applicant to be a prevailing party.
Section 1132(g)(1), Title 29, U.S. Code provides that:
 [i]n any action * * * by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.
In a recent case, the Fifth Circuit Court of Appeals discussed Section 1132(g)(1) and a "split of authority" among a number of United States Circuit Courts of Appeal about whether a party must be a "prevailing party" to be eligible to recover attorney fees. See Gibbs v. Gibbs (C.A.5 2000), 210 F.3d 491, 501.
Notably, the party requesting fees in Gibbs was not the party who had received a favorable judgment. Gibbs involved a claim for insurance proceeds brought by the wife of a murder victim. The wife was suspected of involvement in the murder, and the insurer refused to pay her the proceeds. After the wife brought an action in federal court, the insurer filed an interpleader counterclaim and deposited the insurance proceeds. The parties' minor children were brought into the action as potential beneficiaries, and a guardian ad litem was appointed to represent their interests. Id. at 496-97. Ultimately, the district court reluctantly found that the proceeds had to be distributed to the wife. However, the court also awarded attorney fees to both the insurer and the guardian ad litem. Id. On appeal, the Fifth Circuit thus considered if the insurer had to be a prevailing party to collect fees.
In this regard, the Fifth Circuit noted that unlike other fee-shifting statutes enacted by Congress, the term "prevailing party" is "conspicuously absent" from the statutory language in Section 1132(g)(1). Id. at 501. After making this observation, the Fifth Circuit noted that the Martin decision had incorrectly cited the First, Third, Fifth, Seventh, and Ninth Circuits as having imposed a prevailing party requirement. Id., discussing Martin v. Blue Cross Blue Shield of Va., Inc. (C.A. 4 1997), 115 F.3d 1201. In contrast, the Fifth Circuit concluded that only the Seventh Circuit could correctly be read "as going so far as to actually require a party to prevail before a district could consider an award of fees." Id. (emphasis in original).
After pointing out Martin's error, the Fifth Circuit commented that:
 [t]he remaining circuit decisions cited by the Martin court simply do not require that a party prevail as a pre-requisite to consideration for an award of attorney fees, and more recent decisions from these courts hold to the contrary — that a party need not prevail in order to be entitled to consideration for fees under ERISA.
Id. at 502.
The Fifth Circuit next considered cases from the First, Third, Tenth, and Eleventh Circuits, and a prior Fifth Circuit case in which Justice White sat by designation and had written for the court. The Fifth Circuit concluded that the greater weight of authority "supports the notion that a party need not prevail in order to be eligible for an award of attorney fees under § 1132(g)(1) of ERISA." Id. at 503. Accordingly, the Fifth Circuit held that the insurer, as a non-prevailing party, could properly have been awarded fees. Id.
As we said earlier, the trial court in the present case found that the Sixth Circuit does not impose a "prevailing party" requirement. To dispute this finding, the Paysons have cited Sixth Circuit cases that allegedly impose such a requirement. However, the cited cases are inapplicable, for various reasons. For example, Othen was not an ERISA case. Instead, Othen involved a request for attorney fees under Section 1988, Title 42, U.S. Code, which contains a specific prevailing party requirement. 699 F.2d 309, 313.
Likewise, the fee request in Brown did not arise from an ERISA proceeding, but from Title I of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), Section 2 et. seq., Title 29, U.S. Code, Section 401 et. seq. See 76 F.3d 762, 770. Unlike Section 1132(g)(1) and Section 1988, the section of the LMRDA involved in Brown did not even provide for an award of attorney fees. However, the United States Supreme Court had previously held that district courts could award fees under the LMRDA to a union member whose lawsuit "produced a `common benefit' shared by the membership at large." 76 F.3d at 770, citing Hall v. Cole (1973), 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702. Therefore, in Brown, the Sixth Circuit applied a theory that federal courts had previously developed for deciding if a party had established "prevailing party"status, i.e., the catalyst theory. 76 F.3d at 771. Under this theory, a party could recover fees without obtaining a consent or judgment decree, if the suit acted as a "catalyst" for the change which was sought. Id.
The United States Supreme Court recently rejected the catalyst theory, even though it was commonly used by lower federal courts. See Buckhannon Board and Care Home, Inc. v. West Va. Dept. of Health and Human Resources (2001), 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855. However, this rejection is irrelevant to the present case, since Section 1132(g)(1) does not contain a prevailing party requirement. And, as we said, Brown is also inapplicable because it did not involve Section 1132(g)(1).
The final Sixth Circuit case cited by the Paysons as imposing a "prevailing party" requirement is Trustees for Michigan Laborers Health Care Fund v. Eastern Concrete Paving Co. (Oct. 31, 1991), C.A. 6 No. 90-2320, unreported. However, this case is also incorrectly cited, as it deals with Section 1132(g)(2), Title 29 U.S. Code, not with Section 1132(g)(1). Unlike Section 1132(g)(1), Section 1132(g)(2) provides for mandatory fees in a particular situation, i.e., where a fiduciary sues to enforce an employer's contribution, and receives a judgment in favor of the plan. Poltice v. Guardsman Products, Inc. (C.A.6 1996), 98 F.3d 933,936; Section 1132(g)(2). In contrast, Section 1132(g)(1) says nothing about receiving a judgment.
Instead of a "prevailing party" requirement, the Sixth Circuit has for years applied a five-factor test to decide if attorney fees should be awarded under Section 1132(g)(1). See, e.g., Secretary of Dept. of Labor v. King (C.A. 6 1985), 775 F.2d 666; Firestone Tire Rubber Co. v. Neusser (C.A. 6 1987), 810 F.2d 550; Armistead v. Vernitron Corp. (C.A. 6 1991), 944 F.2d 1287; and Poltice, 98 F.3d 933. This five-factor test is generally used throughout the federal system. Gibbs, 210 F.3d at 504. An Ohio state court has also used the five-factor test, although not in the context of a fee award to a non-prevailing party. See Kent v. Central Benefits Mut. Ins. Co. (1990), 67 Ohio App.3d 142.
As outlined in Secretary of Dept. of Labor v. King, the five factors (which did not originate in King) are:
 1) the degree of the opposing party's culpability or bad faith; 2) the opposing party's ability to satisfy an award of attorney's fees; 3) the deterrent effect of an award on other persons under similar circumstances; 4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and 5) the relative merits of the parties' positions.
775 F.2d at 669 (citations omitted). These factors are not statutory and merely summarize considerations that have been "deemed significant in other cases." Poltice, 98 F.3d at 937. None of the factors "is dispositive." Id.
As we mentioned, the trial court in the present case rejected the "prevailing party" requirement. The trial court also applied the five-factor test before it found the Paysons liable for pay attorney fees. In view of the above discussion, we find no error in the decision not to apply a "prevailing party" requirement or in the use of the five-factor test. Instead, the trial court's legal conclusions were consistent with relevant authority. As a result, the first issue is without merit.
 II
In the second issue for review, the Paysons contend that the trial court erred and/or abused its discretion when it applied the five-factor test. Again, we disagree.
Because Section 1132(g)(1) confers broad discretion, trial court decisions on fees are reviewed for abuse of discretion. King,775 F.2d at 669. As interpreted by the Sixth Circuit, abuse of discretion in this context "exists only when the court has the definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." Id. After reviewing the record, we are not firmly convinced that the trial court made a clear error of judgment.
Concerning the first factor, the Paysons say there is no evidence that they acted with a sinister motive. In this regard, they focus on the fact that they harbored no ill will toward Guardian. They also rely on the fact that the third-party complaint was "agreed" to by MVH and was "approved" by the Dayton Municipal Court judge who originally handled the case. The Paysons further claim that they never received the June 8, 1998 letter from Peter Lenhart and never had a chance to verify their coverage. We find a number of these assertions troubling, because they misstate the record and/or misconstrue the law.
In the first place, Guardian did not have to show that the Paysons acted with a sinister motive. Rather, the relevant factor is the "degree of the opposing party's culpability or bad faith." 775 F.2d. at 669 (emphasis added). Courts assess this factor in terms of a party's justification or motives for initiating or continuing litigation. For example, in Neusser, the Sixth Circuit found a lack of culpability, based on the affidavit of the plaintiff's attorney, which indicated a belief that his client was justified in initiating litigation. 810 F.2d at 557. The Sixth Circuit also pointed to the plaintiff's lack of culpable motive, i.e., the plaintiff (an employer), was trying to protect its employees from an unwanted invasion of their privacy. Id.
Similarly, in Cowden v. Montgomery Cty. Soc. for Cancer Control (S.D.Ohio 1986), 653 F. Supp. 1072, the district court awarded attorney fees against a plaintiff who voluntarily dismissed the action during presentation of his own case at trial. In this regard, the court commented that "in this case, both Plaintiff and his counsel should have realized, long before trial, that this case was frivolous in the extreme." Id. at 1073.
In the present case, both the trial court and magistrate found the first factor satisfied because Guardian sent Mr. Payson evidence (the Lenhart letter) which indicated that Guardian was not liable for the Paysons' medical bills. However, instead of dismissing the suit immediately or, at a minimum, disputing the evidence in Lenhart's letter, the Paysons continued with what they should have realized was a frivolous action. We agree with the magistrate and trial court about these facts. We also note that at present, this case has been pending for over four years and has cost Guardian well in excess of $17,000. Specifically, the costs presented at the hearing did not include the time spent in the fee hearing, which appears to have lasted the better part of a day, nor would they have included the time spent litigating this appeal.
Moreover, contrary to the Paysons' implication, the municipal court judge did not "approve" the addition of Guardian as a party, in the sense of giving legal imprimatur to the addition. When the Paysons alleged that Guardian and Anthem were liable for the unpaid medical bills, the judge simply did what any judge in that situation would do — he gave the Paysons leave to file a third-party complaint. However, the decision to file the complaint — as well as the responsibility for ensuring that the claim was legitimate, belonged solely to the Paysons. Likewise, MVH's "agreement" to added parties was merely an observation by MVH that, if, in fact, third parties were liable for the debt, MVH had no objection to their joinder. Since MVH was not a party to the insurance contracts, it had no way of knowing if the Paysons' claims were genuine. The people who would have known that were the Paysons and their insurers.
Even if the Paysons began with a legitimate concern about Guardian's liability, it would have been dispelled by the June 8, 1998 Lenhart letter. Again, while the Paysons contend no evidence was presented to indicate that Mr. Payson received this letter, the record reveals otherwise. Specifically, Lenhart's affidavit (which is attached to Guardian's July, 14, 1998 motion) says that he sent the June 8, 1998 letter and attachments to Mr. Payson's office.
We can reasonably assume that letters addressed to a business address are received in the absence of any evidence to the contrary. See, e.g., Potter v. Troy (1992), 78 Ohio App.3d 372, 377. Once Guardian established that the letter and documents were sent, the Paysons were required to rebut the presumption. This they did not do — or failed to do convincingly.
Specifically, at the fee hearing, Frank Payson admitted receiving a letter and documents from Peter Lenhart. Upon being shown the June 8, 1998 letter and documents, Payson stated that the letter might or might not be the one he had received from Lenhart. Payson also admitted that the letter was addressed to him at his correct address, and said he had no reason to believe the letter was not sent to him. Although Payson made other inconsistent and/or ambiguous remarks about the letter, the trial court was justified relying on these admissions, and in finding that Payson did, in fact, receive the June 8, 1998 Lenhart letter and attachments. Significantly, Mr. Payson never produced a letter or documents that differed from the ones Lenhart claimed to have sent.
However, even if this were otherwise, the fact remains that the Paysons did receive Guardian's motion and attachments in July, 1998, when they were filed with the trial court. These documents clearly indicated that Guardian was not responsible for the alleged debt. Thus, the Paysons would clearly have been aware at that time of the frivolous nature of their claims. Despite this knowledge, the Paysons proceeded with suit and only dismissed Guardian after several more months had elapsed. In the meantime, they made no attempt to conduct any discovery or to challenge Guardian's position. Accordingly, we agree with the lower court that the first factor weighs in favor of a fee award against the Paysons.
The second factor relates to an opposing party's ability to pay fees. King, 775 F.2d at 669. In this regard, the Paysons claim they have little ability to pay fees, because their combined income is only about $30,000 per year. The magistrate held that the Paysons had some ability to pay based on their moderate income, but did not have great ability. As a result, the magistrate reduced the fee award by 25%, from $11,578.50 to $8,638.88. The trial judge agreed with these conclusions. The judge also noted that Mr. Payson is a licensed attorney in the State of Ohio and should have known the potential risk of being held liable for attorney fees.
We agree with the magistrate and trial court. Attorneys know better than anyone the high degree of expense caused by frivolous litigation. That point is certainly illustrated by the present case. Therefore, attorneys act at their own peril when they proceed with claims that any reasonable observer would know are without merit. Since the evidence indicated that the Paysons did have some ability to pay fees and some equity in their home (as mentioned by the trial court), the second factor also weighs in favor of an award. We note that the award could easily have been greater.
The third factor is the deterrent effect of a fee award. 775 F.2d at 669. In this regard, the Paysons argue that Guardian failed to present evidence that an award would have any deterrent effect. In particular, the Paysons point out that this is not a high profile case or one involving media coverage. The magistrate and trial court both found, however, that an award would deter others from engaging in the pursuit of actions that essentially become nuisance suits.
Normally, the deterrent effect factor is assessed in light of ERISA's goals. For example, in Gibbs, the Fifth Circuit Court of Appeals observed that ERISA's purposes are not served by using deterrent effect as a sword to discourage beneficiaries from pursing a claim, rather than as a shield, "to protect beneficiaries from the fear of having to pay to pursue an important ERISA claim in the event of failing to prevail."210 F.3d at 505.
Although ERISA's goals are important, the factors are somewhat intertwined. Due to the frivolous nature of the third-party complaint, the Paysons did not have any type of important ERISA claim to pursue. Consequently, a fee award in this case would not discourage beneficiaries from pursing legitimate claims. By the same token, an award of fees against the Paysons might deter others, including attorneys, from filing groundless claims. In that event, all ERISA beneficiaries would reap the benefit of decreased costs. Consequently, we agree with the trial court that the third factor weighs in favor of a fee award.
The fourth factor concerns whether the party asking for fees sought to confer a common benefit on all participants or to resolve significant legal questions under ERISA. King, 775 F.2d at 669. Both sides and the magistrate agree that the fourth factor is not applicable to this case. However, that does not mean that an award of fees is not merited. As we mentioned, no one factor is dispositive. Poltice, 98 F.3d at 937. Moreover, courts often focus only on factors thought pertinent, and do not consider factors that are inapplicable under the facts of the case. See, e.g., Armistead, 944 F.3d at 1304-04 (focusing on first, third, fourth, and fifth factors), and Poltice, 98 F.3d at 937 (fourth factor found inapplicable).
Finally, the fifth factor is the relative merits of the parties' positions. King, 775 F.2d at 669. This element often relates to the first factor, since parties do not normally act in good faith when they take frivolous positions. The Paysons' argument in this context is that their position was not found meritless, since they dismissed their case. However, the magistrate and trial court felt otherwise. And, as we said, we agree that the Paysons' position lacked merit. Accordingly, the fifth factor also weighs in favor of a fee award.
Because the King factors point to an attorney fee award, the trial court did not abuse its discretion in deciding to award fees.
 III
The third issue for review is based on alleged error in computing fees. According to the Paysons' initial brief, the magistrate improperly allowed recovery for copying charges, telephone calls, and automated research charges. After Guardian pointed out in its brief that the trial court only allowed recovery for professional time, the Paysons changed their argument in the reply brief. Specifically, they limited their argument to a claim that the magistrate improperly failed to exclude $2,503.61 in automated research charges. The Paysons' other disagreement is over the award of 2.9 hours in fees for work performed before June 15, 1998. This date is allegedly significant because Linda Holmes indicated in a June 19, 1998 letter that Guardian would only seek to recover attorney fees incurred after June 15, 1998.
Our review of the record indicates that the magistrate did not award the cost of automated legal research. The testimony at the fee hearing indicated that Guardian's total legal fees were about $14,465. Expenses, including automated legal research, came to $3,159.50, for a total claim of $17,624.50. In his decision, the magistrate considered only professional time, not any other expenses.
Based on the evidence, the magistrate found that a total of 96.5 attorney and paralegal hours had been expended on this case. However, because we had previously rejected any recovery of attorney fees for the writ of prohibition, the magistrate began the fee calculation by deducting 21.4 hours for work done in that context. Based on the respective hourly amount of the individuals who had worked on the writ of prohibition, the magistrate arrived at a figure of $2,824.50 to be deducted. He then subtracted that amount from the total hourly fees claimed. As a result, the magistrate found that the basic starting point for fees (after deduction of writ of prohibition fees) was $11,578.50. As the magistrate explained, the "figure is derived by multiplying a total of 75.1 necessary hours times the various reasonable rates of the legal professionals."
Simple math indicates that 75.1 plus 21.4 equals 96.5. Simple math also reveals that $11,578.50 (the "starting point for fees") plus $2,824.50 (the "deducted fees for the prohibition work") equals $14,403, which is within a few dollars of the fees for professional time outlined at the hearing ($14,465). As we mentioned earlier, the magistrate then reduced the $11,578.50 amount further, by 25%, due to the Paysons' financial circumstances. Thus, the final fee award was $8,638.88.
In view of the above discussion, the Paysons' argument has no merit whatsoever, and amounts, in our opinion, to a frivolous position.
As we mentioned, the Paysons also challenge time expended before June 15, 1998. Both sides agree that the total amount of this time was only 2.9 hours. Guardian contends that the magistrate, in fact, excluded 2.4 of these hours. Specifically, the magistrate allowed 96.5 hours rather than the total number of professional hours shown on the invoices (98.9 hours). This is a difference of 2.4 hours. Therefore, the only way to account for the hours is to assume that the magistrate excluded 2.4 hours of the time prior to June 15. As a result, Guardian contends that the fee award actually included only a very small fraction of the hours incurred before June 15, 1998. Guardian further argues that the trial court had discretion, in any event, to award fees for time spent on the case before June 15, 1998.
The Paysons do not specifically address this point. Instead, they claim in their reply brief that Guardian has agreed that the magistrate erred in this respect. Again, this is an incorrect statement about the record.
In view of the substantial amount of fees Guardian did not recover, we think the award of such a minimal amount (.5 hours) was certainly within the trial court's discretion. Even if the entire 2.9 hours had been included, we would find no abuse of discretion. As we said before, the trial court did reduce the fee award by 25% based on the Paysons' financial position. However, the reduction could just as easily have been by a smaller percentage. These decisions were within the trial court's discretion, and we find no abuse of discretion. Accordingly, the third issue for review is without merit.
 IV
In the fourth issue for review, the Paysons claim that the trial court erred and/or abused its discretion in failing to conduct a proper sanctions hearing. In this regard, the Paysons complain that the magistrate was confused about the basis of the claim for attorney fees, presumed liability when no evidence was presented on that point, and failed to address the Paysons' contention that Guardian had colluded with MVH to violate the contract between Guardian and the Paysons.
Taking the last issue first, the third-party complaint makes no allegations about collusion. Instead, the only claims presented were for indemnification and contribution for the unpaid medical expenses — amounting, as we said, to the $200 deductible of the Paysons under the Guardian policy. Further, no evidence of collusion was presented at the hearing.
Concerning the second point, Guardian's counsel did say at the hearing that he was requesting fees under ERISA, Civ.R. 11, and R.C. 2323.51. This was incorrect, as ERISA was the only basis for fees raised in Guardian's motion. The confusion may have been due to the fact that the attorney who handled the fee hearing was new to the case, i.e., the prior attorney handling the case had left the firm. Nonetheless, neither the magistrate nor the trial court was confused about the applicable law in their decisions. Instead, they both clearly indicated that fees were considered and awarded strictly under ERISA.
Finally, the record does not indicate that anyone presumed liability. As we noted earlier, Guardian had previously presented evidence about entitlement to fees in the motion to dismiss/motion for summary judgment filed in July, 1998. Lenhart's affidavit, with supporting documents, was attached to the motion, and was available to both the magistrate and trial court. Further, Mr. Payson was a witness at the hearing and gave testimony on various relevant points during his cross-examination. We find no evidence that prejudgments about liability were made before the hearing.
Consequently, the fourth issue for review is without merit.
 V
In the fifth issue for review, the Paysons allege that the trial court erred and/or abused its discretion by denying them a "directed verdict" at the conclusion of Guardian's case. The basis for this alleged error is that Guardian did not offer any evidence of liability in its case, and then rested, reserving only the right to cross-examine Frank Payson during presentation of the Paysons' case. As a result, the Paysons feel the magistrate should have given them a "directed verdict."
As a preliminary point, we note that "[a] motion for directed verdict is inappropriate in a bench trial." Tewarson v. Simon (2001),141 Ohio App.3d 103, 115. If such a motion is made in a non-jury trial, it is construed as a motion for involuntary dismissal. Cheliotis v. Gould (Dec. 14, 1994), Montgomery App. No. 14471, unreported, 1994 WL 701963, p. 2.
After the plaintiff has presented evidence, Civ.R. 41(B)(2) allows a defendant to move for dismissal on the ground that under the facts and law, the plaintiff has shown no grounds for relief. In this case, the labels would be somewhat different, since the Paysons were third-party plaintiffs and Guardian, as third-party defendant, brought the motion for fees. However, the trial court's role in any event is:
 to weigh the evidence, resolve any conflicts therein, and render judgment for the defendant if the plaintiff has shown no right to relief. The dismissal will be set aside only if erroneous as a matter of law or against the manifest weight of the evidence.
Bank One, Dayton, N.A. v. Doughman (1988), 59 Ohio App.3d 60, 63. Under Civ. R. 41(B)(2), the trial court also has the option of declining to render any judgment until the close of all evidence.
As we mentioned, the Paysons claim that Guardian failed to establish a prima facie case by resting without calling Mr. Payson as a witness. We find this argument disturbing, in light of the record. According to the trial transcript, Guardian first presented the testimony of an expert witness on attorney fees. Counsel for Guardian then called Mr. Payson as a witness. At that time, Mr. Payson objected to being called as a witness until after he had given testimony in his own case. Based on Mr. Payson's representation that he would, in fact, give direct testimony, the magistrate agreed to defer Guardian's examination until after Mr. Payson testified. Following this discussion, Guardian's attorney took the stand and testified about procedural matters relating to the attorney fee request. Guardian then rested, subject to its cross-examination of Mr. Payson.
Unbelievably, after Guardian rested, Mr. Payson moved to dismiss the fee request, based on Guardian's failure to establish liability, i.e, to present any evidence of bad faith, of the Paysons' ability to pay, or of the other issues relating to the matters in the five-factor test. Quite properly, the magistrate overruled the motion to dismiss.
We are troubled by Mr. Payson's conduct at the hearing, and we are further disturbed that such a spurious argument is being asserted a second time, on appeal. Since Guardian deferred examination based on Mr. Payson's own request and representations to the magistrate, the motion to dismiss was completely inappropriate.
In view of the preceding discussion, the fifth issue for review is rejected.
 VI
The final issue for review contests the trial court's decision to admit expert evidence at the hearing, and the court's finding that the Paysons had received the June 8, 1998 Lenhart letter. Concerning the first point, the Paysons challenge the expert testimony of attorney, Diane Marx, on various grounds, including the fact that Marx spent only three to four minutes reviewing Exhibits XI through XIV just before the hearing, and had reviewed Exhibits I through X over a year before the hearing. The Paysons also challenge Marx's experience in health insurance matters and her experience generally. For example, Marx stated that she had testified in a fee hearing only three times.
ERISA allows an award of "reasonable" attorney fees. See, e.g., Poltice, 98 F.3d at 936 and Neusser, 810 F.3d at 556. Typically, the federal procedure for awarding fees is to give an opposing party the chance to respond to a fee application, with either an affidavit or a memorandum contesting the fee. See, e.g., Drennan v. Gen. Motors Corp. (C.A.6 1992), 977 F.2d 246; Laird v. Metropolitan Life Ins. Co. (N.D.Ohio. 1992), 800 F. Supp. 1506, 1512; Lee v. D.P. L. Co. (S.D. Ohio 1985), 604 F. Supp. 987, 1003; and Bell v. United Princeton Properties, Inc. (C.A. 3 1989), 884 F.2d 713. A formal fee hearing, with witnesses, does not appear to be routine.
In Bell, the Third Circuit Court of Appeals did note that the trial court, "in counsel fee litigation, can never serve as an `expert witness' and may only serve as fact witness when the facts at issue are wholly within its personal knowledge. Thus, with respect to factual issues, the court must be presented with evidence and must make findings based on the evidence." 884 F.2d at 720. In the present case, Guardian presented the trial court with such evidence, through fee invoices and the testimony of two experienced trial attorneys, one of whom was retained specifically as an expert.
Under Ohio law, admission of expert testimony may be reversed on appeal only upon a finding of abuse of discretion. Horton-Thomas v. Avva (Feb. 9, 2001), Montgomery App. No. 18332, unreported, 2001 WL 109146, p. 6. After examining the record, we find no abuse of discretion in the admission of Marx's testimony. Marx has been practicing law in this district for almost twenty years in the area of general civil litigation, and recently served as president of the Dayton Bar Association. She is well familiar with fees charged in the area and is very competent to testify about the reasonableness and necessity of legal fees.
Furthermore, the implication that Marx failed to thoroughly prepare for the hearing is simply not true. Marx indicated that she had first looked at the materials in the file about a year before, when she was first asked to testify. She then spent time during the several days before the hearing, reviewing the materials in the file to refresh her memory. She spent about two and a half hours on this latter process, which did not include the time she had spent reviewing the file a year earlier. Marx said she had looked at every document in the file. She did indicate that she had spent three to four minutes the day of the hearing reviewing a couple of invoices she had not previously seen.
Based on the evidence, the contention that Marx was not a competent witness is without merit. We also disagree with the Paysons' claims about the June 8, 1998 letter. Although Mr. Payson says that he disputed the reliability of the letter at the hearing, the evidence at the hearing indicated that he did receive the letter. To the extent that any disputes exist, they raise credibility issues. The magistrate was obviously in a better position than we are to assess credibility. See, e.g., Jackson v. Jackson (2000), 137 Ohio App.3d 782, 797. We do note that Mr. Payson's credibility has not been enhanced by some of the arguments he has made during this appeal.
The final point that the Paysons raise is the fact that Guardian failed to produce a record keeper to verify that the statement of fees and costs were those actually incurred, or if the records were kept in the ordinary course of business. We disagree.
Evid. R. 803(6) provides an exception to the hearsay rule, for records of regularly conducted activity. These include:
 [a] memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness * * * unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.
Emphasis added.
The source of information about the invoices in this case was Jonathan Hollingsworth, a partner in the law firm representing Guardian. Hollingsworth testified at length about the invoices, the time recorded on the invoices, record — keeping at the firm, and the preparation of the documents. Admittedly, Hollingsworth was not the administrative person who prepared the records. However, the rule does not require the actual custodian to testify. Instead, as is pointed out in Guardian's brief, all that is required is that the foundation for admission come from a witness who can "`vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business.'" State v. Davis (1991), 62 Ohio St.3d 326, 342-43. Because Hollingsworth was such a witness, the evidence was properly admitted. Consequently, the sixth issue for review is also without merit.
Based on the preceding discussion, the single assignment of error (with six sub-issues) is overruled and the judgment of the trial court is affirmed.
FAIN, J., and YOUNG, J., concur.